### STATE v. ISAIAH HAM.

(Filed 24 January, 1934.)

**Criminal Law L c—Exclusion of testimony of declaration offered to impeach dying declaration held not prejudicial on record of this case.**

Where a dying declaration of deceased meets all requirements of competency in that it was made when declarant was in actual danger of death and had full apprehension of that danger, and was made shortly prior to actual death of declarant, the exclusion of testimony offered for the purpose of impeaching the dying declaration, that declarant stated to the first person to reach her after she was shot, in response to his question as to what was the matter, that she was drunk, *is held* not

prejudicial error where it appears that the excluded declaration was made an hour or so before the admitted dying declaration, and that the witness was allowed to testify that he smelled whiskey on declarant's breath.

APPEAL by defendant from *Barnhill, J.*, and a jury, at April Special Term, 1933, of DURHAM. No error.

The defendant Ham and one Susie Burthay were tried on an indictment charging them with first degree murder of one Maggie Lewis on Thanksgiving night, 24 November, 1932. The jury returned a verdict of not guilty as to Susie Burthay and a verdict of guilty of murder in the second degree as to the defendant, Isaiah Ham. From the judgment of the court below he appealed to the Supreme Court.

Dr. H. R. Sinnett testified for the State, in part:

"I live at the Lincoln Hospital, and have been there since July last, as an interne. I saw Maggie Lewis on night she died. I was on duty that night. It was around nine-thirty when she was admitted and taken to operating room. I examined her. She was in a weakened condition, her pulse lost, blood pressure low. There were two external wounds on her left side. I didn't examine her internally; she was so weak. She was conscious of her condition. She said, "Do something for me, I'm dying." She died later on. She knew she was dying, that she was in imminent danger. She said she knew she was at the Lincoln Hospital. She said Isaiah Ham shot her near the bridge. Mr. King and Mr. Thompson were present. I was present when Dr. Cordice examined her. She died from a bullet wound."

Helen King testified for the State.

"I am night supervisor at Lincoln Hospital. I was there on Thanksgiving night. I admitted Maggie Lewis and asked her questions while she was being examined by doctors, I wanted to get record for hospital. She told me her name and that she lived on Cobb Street. She said she was shot, I rang emergency bell for doctor and he came into room. She said, 'Do something, I'm dying.' She said, 'Isaiah Ham shot me.' She made some statement in front of Dr. Sinnett. She died around eleven-thirty p.m."

H. E. King testified for State:

"I was out that way and came across the ambulance. I saw Maggie Lewis in ambulance. I asked the driver to wait a minute. They opened the door and I asked her who shot her. She answered, 'Isaiah Ham.' I saw her an hour or two later at hospital. In presence of Dr. Sinnett and the nurse, she was asked question as to who shot her. She said, 'Isaiah Ham.' She said she lived at 204 Cobb Street. She did not relate any details as to how she was shot."

There was other testimony to the same effect as the testimony of the above witnesses.

STATE *v.* HAM.

The evidence for defendant:

Isaiah Ham, Mary Canaday, Jake Brown, John Hines, and Willie Lane testified concerning the whereabouts of the defendant, Ham, on the night of the murder, thereby furnishing an alibi, and nothing as to the dying declaration.

Cairo Johnson, testified, in part:

"I was at Johnson Farrington's on Pine Street Road. It is about fifty feet from the bridge. I went to house about six-thirty. Johnson Farrington lived in second house from bridge. I was in that one. I was there practically all evening, going to and from the place. Farrington was going to give party. I stepped inside door and met Maggie Lewis talking to Johnson Farrington. I said, 'Hello, Maggie.' I went to rear of house and then came back to front. Maggie Lewis left alone and went down road by herself. That was about a quarter to eight. About ten or fifteen minutes, or probably twenty-five minutes, I heard a couple of shots. We sat in house a few minutes after shot. Fletcher Norwood heard groans. Fletcher Norwood, his wife and I went down in car and threw lights on her.

Q. What, if anything, did she say to you? A. I asked her what her trouble was and she said, 'I'm drunk.' "

To this, the State objected, and upon the court sustaining the objection, the defendant, Ham, excepted. The State moved to strike out the answer, and it was allowed. The defendant, Ham, excepted. The court instructed the jury to disregard the answer, that which the deceased said to the witness.

This is the only exception and assignment of error made by defendant, Ham. Johnson further testified: "She was gone about fifteen minutes before shots. It was about ten or fifteen after we heard shots before we went out to see what it was all about. It was around ten minutes before ambulance came. When she left house, she was walking at a slow gait. She didn't say anything about her condition at that time. I got very close to Maggie and could smell whiskey when I first met her, but not down on the bridge. When I went down, I picked her up and carried her up on the road a little piece and she exclaimed, 'I'm wounded.' I lay her back down and told Fletcher Norwood to go get the ambulance. I smelled whiskey on her breath when I moved her."

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Bruton for the State.*

*T. Spruill Thornton for defendant.*

CLARKSON, J. Defendant's only exception and assignment of error is to the action of the court below in excluding certain evidence of a witness by the name of Cairo Johnson who was the first witness to reach the

deceased after she was shot, which evidence relates to a statement made by the deceased, "I am drunk."

In *S. v. Mills,* 91 N. C., 581-594. Speaking to the subject of dying declarations is the following:

"The rule for the admission of such testimony is thus laid down in Taylor on Evidence, 648: (1) 'At the time they were made, the declarant should have been in actual danger of death. (2) That he should have a full apprehension of his danger; and (3) That death should have ensued.' From the time the deceased was shot, up to the time he made the declaration as testified to by the witness Ousby, he was heard repeatedly to say, 'I am bound to die.' He told the witness Parker that he was shot in the side and back, and was bleeding internally, and 'was bound to die.' " *S. v. Wallace,* 203 N. C., 284.

The testimony of Dr. Sinnett and others was competent and in fact the defendant does not make any objection to this evidence. The sole exception and assignment of error was the exclusion of the testimony of Cairo Johnson. Q. What, if anything, did she say to you? A. I asked her what her trouble was and she said, "I'm drunk."

This conversation took place about 8:30 o'clock from the testimony of Johnson. From the testimony of Dr. Sinnett it was about 9:30 when she stated to him, "Do something for me, I am dying" and stated that "Isaiah Ham shot her near the bridge." This evidence of Johnson was for the purpose of impeaching the dying declaration of Maggie Lewis. This testimony, which was objected to, was some hour or so before the dying declarations of Maggie Lewis. The court below admitted the testimony of Johnson to the effect, "I got very close to Maggie and could smell whiskey when I first met her, but not down at the bridge," further, "I smelled whiskey on her breath when I moved her." The testimony excluded was a conclusion of Maggie Lewis. The fact that the witness smelled whiskey on her breath was admitted by the court below to impeach Maggie Lewis' dying declaration. The exclusion of Maggie Lewis' conclusion that "I am drunk," we do not think prejudicial or reversible error. *S. v. Layton,* 204 N. C., 704. Maggie Lewis' dying declaration in every detail was clear: First, she said she was shot. This was true. Second, "Do something for me, I am dying." This was true. Third, "she said she lived at 204 Cobb Street." This was not disputed. Fourth, "she knew she was at the Lincoln Hospital." Fifth, she said, "Isaiah Ham shot her near bridge," the jury so found. On the entire record, we find

No error.