BROGDEN and SCHENCK, JJ., dissenting opinions.
At December Term, 1933, of the Superior Court of Burke County the grand jury returned a bill of indictment, as follows:
"STATE OF NORTH CAROLINA — BURKE COUNTY.
SUPERIOR COURT, DECEMBER TERM, 1933.
"The jurors for the State upon their oath present that Dwight Beard, late of the county of Burke, on the 18th day of February, in the year of our Lord one thousand nine hundred and thirty-two, with force and arms, at and in the county aforesaid, unlawfully and wilfully, feloniously and with premeditation and deliberation, and of his malice aforethought, did kill and murder one Augustus Bounos, a human being, against the form of the statute in such case made and provided and against the peace and dignity of the State.
"L.S. SPURLING, Solicitor." *Page 675 
When it was returned by the grand jury, the said bill of indictment was endorsed as follows:
 "No. 277. State v. Dwight Beard. State, Pros. Witnesses, J. P. Coffey X Alvin Eller.
"Those marked X sworn by the undersigned foreman, and examined before the grand jury, and this bill found a True Bill.
"A.L. BENNETT, Foreman Grand Jury."
The bill of indictment, with the said endorsement, was duly received by the presiding judge, and duly entered on the records of the court by the clerk.
Thereafter, during said December Term, 1933, of the court, the defendant Dwight Beard was duly arraigned on said indictment, and on such arraignment entered a plea of "Not guilty."
After the defendant had entered a plea of not guilty, as aforesaid, his counsel moved the court for a writ of special venire to be directed to the sheriff of Catawba County, commanding the said sheriff to summon from said county seventy-five men to be and appear at the courthouse in Morganton during said term of court to serve as jurors at the trial of this action. The said motion was supported by affidavits, as required by the statute, C. S., 473, and was allowed by the court.
Thereafter, on motion of the solicitor for the State, and without objection by the defendant, the action was continued until the next term of the court, and the defendant Dwight Beard was remanded to the custody of the sheriff of Burke County.
When the action was called for trial at the next term of the court, to wit: April Special Term, 1934, counsel for defendant moved the court for a writ of special venire to be directed to the sheriff of McDowell County, commanding the said sheriff to summon from said county seventy-five men to be and appear at the courthouse in Morganton on 30 April, 1934, then and there to serve as jurors at the trial of this action. The said motion was supported by affidavits as required by statute, C. S., 473, and was allowed by the court. The writ was duly issued to and served by the sheriff of McDowell County.
When the action was called for trial, after twelve jurors had been chosen from the special venire, but before they had been impaneled, counsel for the defendant moved the court to quash the indictment on the ground that the bill had been found a true bill by the grand jury at the December Term, 1933, of the court, on evidence which was wholly incompetent. *Page 676 
Counsel for defendant stated to the court that they were able to show, and would show if permitted by the court to do so, that J. P. Coffey was the only witness who had been sworn and who had been examined before the grand jury, and that his testimony was wholly hearsay, in that said testimony was founded wholly on statements made to the said J. P. Coffey, in the absence of the defendant Dwight Beard, by Alvin Eller, whose name was endorsed on the bill of indictment as a witness for the State, but who had not been sworn or examined before the grand jury. Counsel for defendant further stated to the court that they were able to show, and would show if permitted by the court to do so, that a statement in writing, signed by Alvin Eller, had been read to the grand jury as evidence, and that the bill had been found by the grand jury as a true bill solely on the testimony of J. P. Coffey and the statement of Alvin Eller.
The court declined to hear evidence in support of the motion to quash, and denied the motion. The defendant excepted.
At the trial of the action the evidence for the State showed that the deceased Augustus Bounos was shot and fatally wounded near his home in Valdese, Burke County, at about nine o'clock on Thursday night, 18 February, 1932, and that as the result of his wounds the said Augustus Bounos died in a hospital at Morganton on the Sunday following; that within a short time before he was shot the deceased had returned to his home from his place of business in Valdese, in a truck, which he had parked at the garage in his back yard; that after he had parked his truck the deceased was assaulted and robbed of a large sum of money — about $1,800, which he had in a wallet in his pocket; that the deceased pursued the man who had assaulted and robbed him on the highway for a short distance; and that when the deceased overtook him near a mail box on the highway, the man who had assaulted and robbed the deceased turned and shot the deceased twice with a pistol, thereby inflicting the wounds which resulted in his death on the following Sunday.
The evidence for the State further tended to show that the defendant Dwight Beard is the man who shot and fatally wounded the deceased near the mail box on the highway; that immediately after the defendant turned and shot the deceased, who was pursuing him to prevent his escape, Alvin Eller, who had been with the defendant shortly before the robbery, near the home of the deceased, joined the defendant on the highway, and that they both ran from the scene of the homicide and escaped.
There was evidence for the State which showed that at the time he was shot, and for about five years prior to said time, the deceased Augustus Bounos operated a market and grocery store in Valdese; that *Page 677 
during said time certain factories located in and near Valdese paid their employees by checks on Friday of each week; and that it was the custom of the deceased to go to Morganton — a distance of about nine miles — on Thursday of each week and to return to Valdese with a large sum of money, which he used to pay the checks of employees of the factories, who were his customers, on the succeeding Friday. There was also evidence for the State tending to show that the deceased went to Morganton on Thursday, 18 February, 1932, and returned to his place of business during the afternoon with about $1,800 in money, and that when he left his place of business at about 8:30 that night he had the money in a wallet in his pocket. Neither the money nor the wallet was found on his person or near the scene of the homicide, after he was shot. The defendant objected to the introduction of evidence tending to show the custom of the deceased, and excepted to the refusal of the court to sustain his objections.
There was also evidence for the State tending to show that some time after the homicide, in consequence of statements made to them by Alvin Eller, who had been arrested on a warrant charging him with the murder of the deceased, officers went to the home of the father of the defendant at Lenoir, N.C. where defendant was living at the date of the homicide, in search of the defendant, and that the officers did not find the defendant in his father's home. The defendant objected to the introduction of this evidence, and excepted to the refusal of the court to sustain his objections.
There was also evidence for the State tending to show that after he was shot and while he was in the hospital at Morganton, where he died, the deceased made a statement to his brother tending to show that he was assaulted and robbed in his yard by the man who shot him on the highway, and that he pursued the man after the robbery for the purpose of recovering his money. The deceased said that he did not know the name of the man who had shot him, but that he had seen him about Valdese during the past three or four weeks, and would know his face if he could see him again. Before making this statement to his brother, in response to questions as to how he was feeling, the deceased had said: "The man got me; I am suffering terribly; I ain't going to make it; I can't make it." The defendant objected to the admission of the statements of the deceased to his brother as "dying declarations," and excepted to the refusal of the court to sustain his objection.
The evidence for the defendant tended to show that during the month of February, 1932, the defendant lived in the home of his father at Lenoir, N.C.; that for several weeks prior to the date of the homicide the defendant had been from time to time in Valdese, seeking employment there; that he left his father's home in Lenoir at about 4:30 p.m. *Page 678 
on Thursday, 18 February, 1932, and went to Valdese, by bus, arriving there at about 9 o'clock p.m.; that he did not know the deceased, and did not go to the home of the deceased at any time after his arrival in Valdese, and that he spent the evening in the company of friends, and left Valdese for Hickory at about 11 o'clock p.m. The testimony of the defendant to this effect was corroborated by the testimony of other witnesses in his behalf. He denied that he is the man who assaulted and robbed the deceased at his home, and thereafter shot him near the mail box on the highway.
With respect to the burden of proof in this action, the court instructed the jury as follows:
"The law puts upon the State, which has made this charge against the defendant, the burden of proof. There is in this case, and I now so instruct you, lest I may later overlook giving you the instruction, no burden of proof on the defendant. The sole burden of proof is and rests and remains on the State throughout the trial. The State must satisfy you by the evidence in this case, beyond a reasonable doubt, of the guilt of the defendant before you will be justified in returning a verdict of guilty. As to the term `reasonable doubt,' that does not mean that you must be satisfied beyond all doubt, nor beyond any doubt, nor satisfied beyond a doubt; it means that you must be satisfied beyond a reasonable doubt, or fully satisfied, satisfied to a moral certainty of the guilt of the defendant from the evidence or lack of evidence in the case. I instruct you that the defendant is presumed by the law to be innocent, as is the case of the defendant in every criminal action, and that the burden is upon the State, as I have previously told you, to satisfy you by the evidence beyond a reasonable doubt of the guilt of the defendant, that is, before you will be justified in returning a verdict of guilty in this case."
The defendant excepted to the instruction that the jury must be satisfied beyond a reasonable doubt "from the evidence or the lack of evidence in the case."
On all the evidence at the trial, and under the instructions of the court in the charge, the jury returned a verdict that the defendant is guilty of murder in the first degree.
From judgment that he suffer death as prescribed by statute, C. S., 4200, the defendant appealed to the Supreme Court, assigning errors based on his exceptions appearing in the statement of the case on appeal.
There was no error in the refusal of the court to hear evidence in support of the motion of the defendant that the indictment in this case be quashed on the ground that the bill was found by the grand jury to be a true bill on evidence which was wholly incompetent. Conceding that the facts are as contended by the defendant, there was no error in the denial of the motion, for the reason that the motion was made at April Term, 1934, after the defendant, on his arraignment at December Term, 1933, had entered a plea of not guilty. The motion to quash, which may be treated as a plea in abatement, was not made in apt time.
In S. v. Moore, 204 N.C. 545, 168 S.E. 842, it is said: "It is well settled as the law of this State that when a bill of indictment has been returned by the grand jury as a true bill upon testimony, all of which was incompetent, or upon the testimony of witnesses all of whom were disqualified by statute or by some well-settled principle of law in force in this State, the indictment will be quashed on the motion of the defendant, made in apt time; but where some of the testimony was competent and some incompetent, or some of the witnesses were qualified and some disqualified, the court will not go into the barren inquiry of how far testimony which was incompetent or witnesses who were disqualified contributed to the finding of the bill of indictment as a true bill. S. v.Levy, 200 N.C. 586, 158 S.E. 94; S. v. Mitchem, 188 N.C. 608,125 S.E. 190; S. v. Coates, 130 N.C. 701, 41 S.E. 706. This is the general rule in other jurisdictions. 31 C. J., 808, and cases cited."
In S. v. Levy, supra, it was held that there was no error in the refusal of the court to hear witnesses who had testified before the grand jury, in support of the defendant's motion that the indictment be quashed on the ground that the bill was found a true bill solely on the testimony of these witnesses, which was incompetent because wholly hearsay. In the opinion in that case the late Justice Adams, speaking for the Court, says: "The suggested practice would hinder the trial and result in useless delay. It would often require the examination of a number of witnesses, including, perchance, members of the grand jury; it would demand of the judge that he invade the province of the grand jury or exercise the function of a petit jury in finding the facts from conflicting evidence and passing upon the credibility of witnesses; it would turn the Superior Court into a forum for an unseemly contest between members of the grand jury and those whom they may have charged with crime. Besides, such a practice is unnecessary; if the evidence is incompetent it will be excluded by the trial court."
In S. v. Pace, 159 N.C. 462, 74 S.E. 1018, it is said: "It is well settled that a plea in abatement, or a motion to quash a bill of indictment after a plea of not guilty is entered, is only allowed in the *Page 680 
discretion of the court. His Honor declined, in his discretion, to permit the plea to be filed. The exercise of his discretion is not reviewable by us. S. v. Jones, 88 N.C. 672."
The first assignment of error on this appeal, based on defendant's exception to the denial of his motion that the bill be quashed for the reasons assigned, cannot be sustained.
The assignments of error based on defendant's exceptions to the refusal of the court to sustain his objections to evidence offered by the State cannot be sustained.
The evidence tending to show that the custom of the deceased to have in his possession at his place of business in Valdese, on Thursday and Friday of each week, a large sum of money was competent as tending to show that the deceased had such sum of money in his possession on the night of the homicide, and that the homicide, was murder in the first degree, as contended by the State. There was evidence also tending to show facts from which the jury might well infer that the defendant, when he returned to Valdese from his home in Lenoir on Thursday afternoon knew that the deceased had gone to Morganton that day and returned to Valdese with a large sum of money.
The evidence tending to show that the defendant was not at his father's home in Lenoir when the officers went there, after the arrest of Alvin Eller, in search of the defendant, was at least not prejudicial to the defendant, whose evidence tended to show that his absence from his father's home, where he was living at the date of the homicide, had no connection with the charge against him in this case. The evidence for the defendant tended to show that he left his father's home several days after the homicide and before he was accused of the murder of the deceased, and went to a distant state, in compliance with the terms of a judgment against the defendant in a criminal action pending in the Superior Court of Caldwell County. This evidence was properly submitted to the jury as tending to rebut any presumption against the defendant in this case, from his absence from his home after the murder of Augustus Bounos.
The evidence tending to show that after he was shot and fatally wounded on Thursday night and before he died in the hospital at Morganton on the following Sunday, the deceased made statements to his brother tending to show that he was shot and wounded while he was attempting to recover the money of which he had been robbed, were competent as dying declarations. Before making these statements as testified by his brother, the deceased, in response to questions as to how he felt, had said: "The man got me; I am suffering terribly; I can't make it; I ain't going to make it; I do not know the name of the man who shot me, but would know him if I could see him again; he has been in and around Valdese for the past few weeks." *Page 681 
The evidence was sufficient to show that at the time he made the statements the deceased was in actual danger of death, and that he was fully apprehensive of his approaching death. The statements made by the deceased under these conditions were properly admitted as dying declarations. S. v. Ham, 205 N.C. 749, 172 S.E. 473, and cases cited.
The defendant assigns as error the instruction of the court to the jury that the jury would not be justified in finding the defendant in this case guilty unless the jury was satisfied beyond a reasonable doubt of his guilt "from the evidence or the lack of evidence in the case." The defendant's contention that by this instruction the court imposed upon the defendant the burden to establish his alibi by his evidence cannot be sustained. Conceding that the instruction standing alone is erroneous, when considered in connection with the entire instruction as to the burden of proof in the case, it cannot be held that it was prejudicial to the defendant. In S. v.Freeman, 100 N.C. 429, 5 S.E. 921, it is said:
"While we do not assent to what is said about the shifting of the burden of proof, when the proof offered by the prisoner tends to show his absence from the place where the offense was perpetrated, and his presence elsewhere at the time, yet the charge in general is so clear and explicit as to what is required of the State in order to a conviction, that it could not be misleading to the jury, fairly considered."
We find no error in the trial of this action. The judgment is affirmed.
No error.