STACY, C. J., took no part in the decision of this case.
At September Term, 1932, of the Superior Court of New Hanover County, a bill of indictment in words as follows, was returned by the grand jury, as a true bill:
"State of North Carolina — County of New Hanover.
Superior Court — September Term, 1932.
The jurors for the State upon their oath present, that P. Q. Moore and John J. Furlong, late of the county of New Hanover, on 30 May, 1932, both before, and since said date, with force and arms, at and in the county aforesaid, did unlawfully and wilfully and feloniously, secretly and in malice, with intent to deceive and to defraud without probable cause or excuse, knowingly send, or cause to be delivered, through the U.S. mail, to Mrs. J. K. Wise, Wilmington, N.C. two certain letters, one dated 30 May, 1932, and the other 9 June, 1932, containing menaces demanding that the said Mrs. J. K. Wise, in the first deposit the sum of $25,000, and in the second letter the sum of $20,000, at a designated filling station, threatening death or serious bodily harm to herself and other members of her family, all with the intent to extort or gain from the said Mrs. J. K. Wise, the said sums of money, against the form of the statute in such case made and provided, and against the peace and dignity of the State.
And the jurors for the State, upon their oath, do further present: That on said days and at said dates, in said county and State, with force and arms, the said P. Q. Moore and John J. Furlong, and others unknown to the jurors, did unlawfully and wilfully and feloniously combine, confederate, conspire and agree, each with the other, secretly and in malice, with intent to deceive and to defraud, without probable cause or reasonable excuse, and in furtherance and confirmation thereof, on 30 May, 1932, and on 9 June, 1932, knowingly send or cause to be sent and delivered through the U.S. mails to Mrs. J. K. Wise, Wilmington, N.C. two certain letters containing menaces demanding that the said Mrs. J. K. Wise, in the first letter deposit the sum of $25,000, and in the second letter the sum of $20,000, at a designated filling *Page 547 
station, threatening death or serious bodily harm to herself and other members of her family, all with intent to extort or gain from the said Mrs. J. K. Wise, the said sums of money, against the form of the statute in such case made and provided, and against the peace and dignity of the State."
On the back of this bills of indictment there were endorsed the names of thirty-four persons as witnesses for the State. A check against each of these names indicated, as shown by an endorsement by the foreman of the grand jury, that each of these witnesses had been sworn by the foreman and had testified before the grand jury.
Before the indictment was read, and before the defendants or either of them had otherwise pleaded thereto, and before the jury had been selected and empaneled for the trial of the action, the defendant, P. Q. Moore, who was present in court, filed his plea in abatement, and motion to quash the indictment, which was in writing and is as follows:
"Now comes the defendant, P. Q. Moore, through his counsel, L. Clayton Grant and Aaron Goldberg, and moves the court that he be permitted to file his plea in bar before pleading, and to have the same disposed of according to law, that is:
This defendant, P. Q. Moore, avers that the bill of indictment in this cause returned by the grand jury was, according to his information and belief, obtained by the reading before said grand jury while considering said bill, the stenographic notes as transcribed and read by the court reporter of the testimony of John J. Furlong, codefendant of the said P. Q. Moore, before Honorable H. A. Grady, judge sitting as a committing magistrate on the preliminary hearing of this cause.
Wherefore, this defendant avers that the bill of indictment was obtained by improper and incompetent testimony, and that being predicated upon incompetent testimony as aforesaid, that such fact does bar the further prosecution under said bill of indictment, and that this plea is a complete bar to this action.
Wherefore, the defendant, P. Q. Moore, prays that this plea be accepted and adjudged a bar to further prosecution of this cause under said indictment."
The motion was overruled, and the defendant excepted.
Before the indictment was read, and before the defendants or either of them had otherwise pleaded thereto, and before the jury had been selected and empaneled for the trial of the action, the defendant, John J. Furlong, who was present in court, filed his plea in abatement, and motion to quash the indictment, which was in writing and is as follows:
"Now comes the defendant, John J. Furlong, and through his counsel, Herbert McClammy and John A. Stevens, offers this plea in abatement, and moves the court to quash the indictment in this action, upon the following grounds: *Page 548 
1. That the bill of indictment in this cause was found upon incompetent and disqualified testimony, to wit:
The declaration of John J. Furlong given at the hearing before Honorable Henry A. Grady, sitting as committing magistrate, and stated before the grand jury by Dwight McEwen, court stenographer.
2. And defendant further submits to this Honorable Court that under the law of North Carolina, where there are two defendants on trial, a bill of indictment cannot be found by the testimony of one of the defendants against the other, and that this principle is especially applicable to a case like this when the testimony of one defendant is recited by a stenographer who took the notes of such testimony."
The motion was overruled, and the defendants excepted.
After the pleas and motions of the defendants had been overruled, the court at the request of counsel for each of the defendants, directed Dwight McEwen, the court reporter, to furnish to counsel for the record a statement of what transpired before the grand jury, while he was present as a witness for the State. This statement appears in the record, and is as follows:
"While I was testifying before the grand jury as a witness for the State in this action, I was asked if I had the testimony of Mr. J. J. Furlong, taken before his Honor, Henry A. Grady, judge, sitting as a magistrate, in the preliminary hearing. I replied that Mr. Furlong, upon the advice of his counsel, voluntarily tendered himself for examination by the solicitor, and that the transcript which I then held in my hands, was a true and accurate transcript of Mr. Furlong's testimony given at the preliminary hearing, under oath, and by me personally transcribed. I was asked whether or not it was admissible as evidence. I replied that I was a witness before the grand jury under a subpoena, and had no authority to offer any legal advice, and would not attempt to do so. I suggested that the solicitor or the judge was available to advise the grand jury. I was then instructed by the foreman to read to the grand jury the evidence of Mr. J. J. Furlong, which I did. I also read portions of the evidence of other witnesses at the preliminary hearing before Judge Grady. I did this under the instructions of the foreman of the grand jury.
I had the evidence taken at the preliminary hearing with me when I went before the grand jury, under a subpoena, as a witness for the State. I took the evidence with me under the instructions of the solicitor."
After their pleas in abatement, and their motions to quash the indictment, on the grounds stated therein, had been overruled by the court, each of the defendants entered a plea of "Not Guilty," and the trial of the issues raised by these pleas proceeded.
The evidence at the trial showed that two letters were delivered by United States mail carriers, one on or about 30 May, and the other on *Page 549 
or about 9 June, 1932, at the home of Mrs. J. K. Wise, in the city of Wilmington, N.C. Both letters were in envelopes addressed in typewriting to Mrs. Wise, and had been received in the mail at the United States postoffice in Wilmington, and there delivered to the carriers whose routes in the city included the home of Mrs. Wise. The letters were typewritten, and directed Mrs. Wise to place large sums of money — one, $25,000, and the other $20,000 — in packages addressed to Captain Raynee, and to deliver said packages to R. L. Johnson at his filling station, located on a public highway in New Hanover County, about seven miles from Wilmington. Each letter contained threats of death or serious bodily harm to Mrs. Wise or to members of her family, if she did not comply with the directions contained in the letters. These directions were specific and in great detail. Mrs. Wise was warned not to communicate or attempt to communicate with the police or with friends in an effort to discover or apprehend the writers of the letters. She was warned of the fate of the Lindbergh baby, whose parents had disobeyed instructions, and sought the aid of the police in their efforts to find their baby, without paying the ransom demanded by its abductors. Mrs. Wise received these letters and promptly consulted her attorney and a friend, to whom she delivered the letters. The matter was reported to the sheriff of New Hanover County, who at once began an official investigation. Both the letters were identified, and offered in evidence by the State.
A package was prepared and addressed to Captain Mal Raynee and on or about 11 June, 1932, delivered to R. L. Johnson at his filling station as directed in the letters received by Mrs. Wise. This package did not contain either of the large sums of money demanded in the letters, but did contain money. During the morning of 15 June, 1932, some person who gave his name as "Willie Wilson," called R. L. Johnson, at his filling station, by telephone, and asked if he had a package for Captain Raynee. Upon being informed by Mr. Johnson that there was a package at the filling station for Captain Raynee, this person requested Mr. Johnson to take good care of the package, saying that he would call for it during the afternoon or the next morning.
About two hours after the telephone conversation, in which the person who had called Mr. Johnson was informed by him that there was a package at the filling station for Captain Raynee, William Bennett, a Negro, who is a resident of the city of Wilmington, called at the filling station and presented to Mr. Johnson a note. This note was typewritten, was addressed to "Mr. Johnson," and was signed "Captain Raynee." The note, which was offered in evidence by the State, is as follows: "Send the package for me by bearer. Enclosed find five dollars for your trouble. There will be more later." Mr. Johnson retained the five dollars which was enclosed with the note, and delivered the package to *Page 550 
William Bennett, who left the filling station at once, driving in the direction of Wilmington. After his return to Wilmington he was arrested. The package had been delivered to him by Mr. Johnson, was found by the officers in his home.
There was evidence tending to show that the note which was delivered to Mr. Johnson at the filling station was delivered to William Bennett, in Wilmington, by the defendant, John J. Furlong, in the presence of the defendant, P. Q. Moore; that the note was written on the same typewriter as that on which the letters received by Mrs. Wise were written; and that both the letters and the note were written on a typewriter in the office of the defendant, P. Q. Moore. There was also evidence tending to show that the defendants were and had been for many years residents of the city of Wilmington, and close and intimate friends. They were together during the morning of 15 June, 1932, and from time to time during the day. The defendant, P. Q. Moore, gave to the defendant, John J. Furlong, the money which the latter gave to William Bennett at the time he delivered to him the note addressed to Mr. Johnson.
The defendant, John J. Furlong, as a witness in his own behalf, testified that the defendant, P. Q. Moore, gave him the note and the money which he gave to William Bennett. This defendant denied that he had written or caused to be written the letters received by Mrs. Wise, and testified that he did not know the contents of the said letters or of the note which he delivered to William Bennett, at the request of the defendant, P. Q. Moore.
The defendant, P. Q. Moore, as a witness on his own behalf, denied that he had given to the defendant, John J. Furlong, the note which the latter had delivered to William Bennett. He testified that he had not written or caused to be written the letters which were received by Mrs. Wise, or the note which was delivered by William Bennett to R. L. Johnson, at the filling station.
At the close of all the evidence, each defendant moved for judgment as of nonsuit. The motions were denied, and both defendants excepted.
There was a verdict of guilty as to each defendant, with a recommendation by the jury to the court of mercy.
From judgment that the defendants be confined in the State's prison, the defendant, P. Q. Moore, for a term of three years, and the defendant, John J. Furlong, for a term of two years, both defendants appealed to the Supreme Court.
Attorney-General Brummitt Assistant Attorneys-General Seawell andSiler for the State.
The assignments of error on this appeal cannot be sustained. There was no error in the refusal of the trial court to hear or consider the pleas in abatement and the motions to quash the indictment, upon the grounds stated therein, although the pleas were tendered and the motions were made in apt time; nor was there error in the refusal of the court to allow the motions of the defendants at the close of all the evidence for judgment as of nonsuit, as to each defendant.
It is well settled as the law of this State that when a bill of indictment has been returned by the grand jury as a true bill, upon testimony all of which was incompetent, or upon the testimony of witnesses all of whom were disqualified by statute or by some well settled principle of law in force in this State, the indictment will be quashed on the motion of the defendant made in apt time; but when some of the testimony was competent and some incompetent, or some of the witnesses heard by the grand jury were qualified and some disqualified, the court will not go into the barren inquiry of how far testimony which was incompetent or witnesses who were disqualified contributed to the finding of the bill of indictment as a true bill. S. v. Levy, 200 N.C. 586, 158 S.E. 94; S. v. Mitchem,188 N.C. 608, 125 S.E. 190; S. v. Coates, 130 N.C. 701, 41 S.E. 706. This is the general rule in other jurisdictions. 31 C. J., 808, and cases cited.
The evidence offered at the trial was sufficient to support the allegations in the indictment. It tended to show a violation of C. S., 4291, by the defendants and was properly submitted to the jury. The judgment is affirmed. C. S., 4173.
No error.
STACY, C. J., took no part in the consideration or decision of this case.