## STATE v. B. O. CHOATE.

(Filed 25 February, 1948.)

**1. Indictment § 13—**

It is incumbent upon defendant to show that all the witnesses heard by the grand jury were disqualified or that all the testimony before the grand jury was incompetent in order to be entitled to quashal of the indictment, since quashal on this ground will not be allowed if some of the witnesses were qualified or some of the evidence before the grand jury was competent.

**2. Same: Criminal Law § 81b—**

Where the record on appeal fails to show what testimony was before the grand jury or what the witnesses who appeared before that body knew about the charge under investigation, defendant's exceptions relating to the denial of his motions to quash on the ground that there was no competent evidence before the grand jury, cannot be sustained.

**3. Abortion § 10—**

Evidence of defendant's guilt of criminal abortion *held* sufficient to overrule motions to nonsuit.   G. S., 14-45.

**4. Criminal Law § 29b—**

Evidence of defendant's guilt of crimes other than the one charged in the bill of indictment is incompetent for the purpose of showing the character of defendant or his disposition to commit an offense of the nature of the one charged.

**5. Criminal Law § 42e—**

Defendant's answers on cross-examination to questions relating to collateral matters asked for the purpose of impeachment, are conclusive, and the State may not contradict the answers by other evidence.

**6. Criminal Law § 29b—**

As an exception to the general rule, evidence of defendant's guilt of crimes other than the one charged in the bill of indictment is admissible when such evidence tends to show *quo animo* intent, design, guilty knowledge, or *scienter* or for the purpose of identification.

**7. Same: Abortion § 9a—**

The general rule that evidence of defendant's guilt of crimes other than the one charged is incompetent, applies to prosecutions for abortion, and the exception to this rule is under some circumstances applicable in such prosecutions.

**8. Same—**

Where defendant's defense to a charge of criminal abortion is that the operation was necessary to save the life of the mother, evidence that defendant had committed previous abortions is competent to show *animus;* but where defendant denies he performed the operation charged, evidence of previous abortions committed by him is incompetent.

**9. Criminal Law §§ 48d, 81c (3)—Withdrawal of prejudicial evidence after it had been with jury overnight held not to have cured error in its admission.**

In this prosecution for criminal abortion, G. S., 14-45, defendant denied that he had performed the operation charged.  On cross-examination the State asked him if he had not performed abortions upon several named women, and defendant denied guilt of such other offenses.  Thereafter, over defendant's objections, the State was permitted to introduce testimony of several of the women named tending to show that defendant had performed illegal operations previous to the one charged in the bill of indictment.  Upon the resumption of the trial the following day, the

Court instructed the jury that the testimony of these witnesses was incompetent and charged them not to consider the testimony. *Held:* The testimony was calculated to prejudice the defendant in the minds of the jurors and was not subject to correction, and a new trial is awarded.

**10. Criminal Law § 54b—**

Where two separate indictments are consolidated for trial and the jury returns a verdict of guilty as to one of them without saying anything in respect of the other charge, it is equivalent to a verdict of not guilty on such other charge.

Appeal by defendant from *Bobbitt, J.*, at September Term, 1947, of Surry.

Criminal prosecution upon two bills of indictment, one (No. 17A) charging abortion under provisions of G. S., 14-45, upon, and the other (No. 17B) murder of a certain named woman, consolidated for trial.

Defendant in apt time moved to quash the bills of indictment on the ground that there was and could not have been competent evidence before the grand jury and that the bills were returned upon hearsay and incompetent evidence. Motion denied. Defendant excepted.

Defendant pleaded not guilty.

On the trial in Superior Court, the State offered evidence tending to show that pursuant to prearrangement with defendant the woman named in the bills of indictment, accompanied by paramour, went by automobile, operated by her, from Charlotte, North Carolina, to the office of defendant in Sparta, North Carolina, arriving after dark on Friday night, 23 August, 1946, for purpose of being treated so as to bring about an abortion, and that she was so treated by him at that time, and given medicine to take according to directions, and "pills for pain"; as a result of which she died Sunday morning, 25 August, 1946, at a hotel in Elkin, North Carolina.

The defendant, as a witness for himself, denied that he treated the woman, as the State's evidence indicated. He testified that he is a physician and lives in Sparta, North Carolina; that in August, 1946, his office was on Main Street; that his brother Leff, also a physician, has office on same floor in the same building where his office is—just one front door, and one reception room,—but his office is on the right as you go in, and Dr. Leff's is on the left, both back of the reception room; that he was not at his office on Friday night, 23 August, 1946; that he did not see the woman in question until she was brought in an automobile to the front of his office on Saturday morning, 24 August, 1946, about 10 or 10:30 o'clock,—the man with her—referring to her as his wife—saying "We want a shot"; that after examining her, his findings indicated to him she needed something to stimulate her instead of dope, and he prescribed accordingly for her; that that was the only thing he did

or advised, and that he "did not at any time on any occasion administer any drug or use any instrument to bring about any premature birth or abortion on" the woman named in the bills of indictment.

Then on cross-examination defendant was asked in detail if he had performed abortion upon several named women, including Mrs. Walter Phillippi, Mrs. Gilmer Stewart and Mrs. Oscar Crouse, daughter of Mrs. John Cox, at certain times covering a period of years—and if as result thereof one of them, Mrs. Crouse, had died on 16 June, 1932. Defendant denied that he had performed abortion or given medicine to produce abortion on any one of the women.

After the defendant had closed his evidence and rested his case, the State called to the witness stand one after the other, Mrs. Walter Phillippi, Mrs. Gilmer Stewart and Mrs. John Cox, whose testimony, respectively, is the subject of exceptions by defendant.

Mrs. Phillippi testified: "I live above Speedwell, Rural Retreat, Virginia. I know Dr. Choate. I went to his office in July about two years ago." Q. "Did Dr. Choate treat you?" Objection—overruled—Exception. A. "You all know what he done." On objection the answer was stricken out, and the jury instructed to disregard the statement. But, over objection and exception by defendant, these questions and answers follow: "Q. Now, don't answer this until they have an opportunity of objecting. What, if anything, did you pay Dr. Choate? A. $35. Q. I beg your pardon? A. $35." The court instructed the jury that this evidence is not admitted for consideration as substantive evidence bearing upon the issues in the case now being tried, but is competent for consideration only as it may tend to impeach, if it does, the jury, to determine whether or not it does tend to impeach the testimony given from the witness stand by the defendant Choate. Defendant again excepts.

Also for like purpose and under like restriction, Mrs. Stewart, as witness for the State, was permitted to testify: "I live at Speedwell, Virginia. I have seen Dr. Choate." And over objections and exception by defendant these questions and answers were permitted: "Q. Where did you see him? A. I have seen him in his office in Sparta; that was two years ago in July. Q. Mrs. Stewart, who, if anybody went with you to Dr. Choate's office? A. Annie Phillippi, the lady who just testified on the stand. Q. Did Dr. Choate treat you? A. Yes."

And, for like purpose and under like restriction, Mrs. John Cox as witness for the State: ". . . I had a daughter named Dora who married Oscar Crouse. She is not living now. I know Dr. B. O. Choate, the defendant." Then over objections and exceptions by defendant, this question and answer follows: "Q. Did Dr. B. O. Choate come to your home prior to your daughter's death? A. Yes, sir."

Then after the examination of two witnesses, whose testimony was short, the evidence closed. The record discloses that thereupon defendant renewed his motion for judgment as of nonsuit, and the court stated : "I'll rule on that . . .; there's one feature of the evidence that I am a little disturbed about. I may make a modified ruling on that later."

The court then, Wednesday afternoon, 24 September, recessed until Thursday morning, 25 September, when upon the convening of court the court instructed the jury as follows :

"Gentlemen of the jury, pay particular attention to the instruction which the Court is about to give you :

"Upon the cross-examination of Dr. B. O. Choate, the defendant, he gave testimony tending to show that he did not know Mrs. Walter Phillippi and Mrs. Gilmer Stewart, and that he had no knowledge or recollection of having treated them, or either of them. Also, upon cross-examination, the defendant gave evidence tending to show that he may have seen Mrs. John Cox, but that he had no knowledge or recollection of having treated her daughter.

"The State, later, called as witnesses Mrs. Walter Phillippi, Mrs. Gilmer Stewart and Mrs. John Cox. Mrs. Phillippi and Mrs. Stewart were permitted to give evidence tending to show that they had been to the defendant's office, some two years ago, and were treated by him. Mrs. John Cox was permitted to give evidence tending to show that some years ago the defendant was in her home and treated her daughter.

"At the time when this testimony of Mrs. Phillippi, Mrs. Stewart and Mrs. Cox was admitted, the Court instructed you that it was not competent as original or substantive evidence, but was for your consideration only for a limited purpose; that is, as it might tend to impeach the credibility of the defendant as a witness.

"Upon further consideration, the Court is of the opinion, and so. rules, that the testimony of Mrs. Phillippi, Mrs. Stewart and Mrs. Cox has no connection with or bearing upon the issues involved in this trial at all, but relates entirely to collateral matters, and, being irrelevant, should be entirely disregarded and excluded from consideration by you for any purpose.

"The Court, therefore, instructs you that the entire testimony of Mrs. Phillippi, Mrs. Stewart and Mrs. Cox is stricken out and withdrawn from your consideration, and the Court instructs you to eliminate the entire testimony of each of these witnesses from your minds and to disregard it as completely as if this testimony had not been given or spoken in your hearing."

The jury returned a verdict of guilty of criminal abortion as charged in the bill of indictment 17A.

Judgment was pronounced.

Defendant appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*R. F. Crouse, R. J. Randolph, and Folger & Folger for defendant, appellant.*

WINBORNE, J.   For determination of questions raised on this appeal, only a few of the points presented require express consideration.   These are:

I.   The exceptions relating to denial of motions to quash the bill of indictment on the ground that there was no competent evidence before the grand jury, and that the bills of indictment were returned upon hearsay evidence:

While it is the settled law of this State that when a bill of indictment has been returned by the grand jury as a true bill, upon testimony all of which is incompetent, or upon the testimony of witnesses all of whom are disqualified by statute or by some well settled principle of law in force in this State, the bill of indictment will be quashed, on motion of defendant made in apt time, it is held that when some of the testimony is competent and some incompetent, or some of the witnesses heard by the grand jury are qualified and some disqualified, the court will not go into the barren inquiry of how far testimony which was incompetent, or witnesses who are disqualified contributed to the finding of the bill of indictment as a true bill.   *S. v. Moore,* 204 N. C., 545, 168 S. E., 842; *S. v. Deal,* 207 N. C., 448, 177 S. E., 332; *S. v. Beard,* 207 N. C., 673, 178 S. E., 242; *S. v. Blanton,* 227 N. C., 517, 42 S. E. (2d), 663.   See also *S. v. Levy,* 200 N. C., 586, 158 S. E., 94.

Applying this principle to the case in hand, it is sufficient to direct attention to the fact that, at the time the motions to quash the bills of indictment were made, the record on this appeal fails to show what testimony was before the grand jury, or what the witnesses who were before the grand jury knew about the charge under investigation.   Hence, the point raised is not made out, and the exceptions cannot be sustained on this record.

II.   The denial of motions for judgment as in case of nonsuit:

Since there must be a new trial for reasons hereinafter set forth, we refrain from a discussion of the evidence adduced on the trial.   However, we say that upon a reading thereof the evidence presents a case for the jury.   We so hold.   Hence these exceptions are not sustained.

III.   The admission of evidence tending to show the commission by defendant of other distinct independent offenses of similar nature to the one on trial, for the purpose of impeachment of defendant:

While there may be lack of uniformity in decisions of the courts of the land as to the competency of such evidence for certain other purposes, text writers and courts uniformly hold that the evidence is inadmissible for the purpose for which it was admitted on the trial below.

In Stansbury on North Carolina Evidence, Sec. 91, it is stated: "Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged . . . The commission of a certain act is never directly evidential of the commission of a certain act at some other time. There is always some intermediate step in the reasoning. If there is no other connection between the two acts, it is argued that the doing of the first act shows a disposition to indulge in that kind of conduct, and from this disposition the probability of the second act is inferred. But to reason thus from one crime to another is a clear violation of the character rule; hence if the first act has no other relevancy than that, it may not be proved." See also *S. v. Beam,* 184 N. C., 730, 115 S. E., 176.

And in Wharton's Criminal Evidence, Sec. 344, the author states: "Evidence of other crimes, when offered in chief, violates both the rule of policy which forbids the State initially to attack the character of the accused and the rule of policy that bad character may not be proved by particular acts."

Moreover, ordinarily, when a witness is cross-examined concerning collateral matters, for the purpose of impeachment, his answers are conclusive, and, as to those matters, he may not be contradicted by other evidence. *S. v. Roberson,* 215 N. C., 784, 3 S. E. (2d), 277. See also *S. v. Jordan,* 207 N. C., 460, 177 S. E., 333.

Applying these principles, the evidence offered is clearly irrelevant, and incompetent, and the admission of it is error.

And, in keeping with these principles, the State, through the brief of Attorney-General filed in this Court, concedes that if the impeaching questions asked the defendant, when cross-examined as a witness, relate to collateral matters, and not to matters substantive in character, the State is bound by the answers of the witness. The State, however, makes two contentions: (1) That the evidence of the three women tending to show other offenses committed by defendant may well be competent to show *quo animo,* intent, design, guilty knowledge, or *scienter,* or for purpose of identification, and (2) that if there be error in admitting the evidence, the error is cured by the later instruction of the court in withdrawing it from the jury.

As to the first contention: In the light of the factual situation which the evidence for the State tends to show, we are of opinion that the evidence offered does not come within the purview of the exception,— especially in view of the purpose for which it was admitted.

The State relies upon the exception to the general rule as stated by *Stacy, C. J.,* in *S. v. Miller,* 189 N. C., 695, 128 S. E., 1, and often repeated and applied in other decisions of this Court:

"It is undoubtedly the general rule of law, with some exceptions, that evidence of a distinct substantive offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other. . . . But to this there is the exception, as well established as the rule itself, that proof of the commission of other like offenses is competent to show the *quo animo,* intent, design, guilty knowledge, or *scienter,* when such crimes are so connected with the offense charged as to throw light upon this question. *S. v. Simons,* 178 N. C., 679, and cases there cited. Proof of other like offenses is also competent to show the identity of the person charged with the crime. *S. v. Weaver,* 104 N. C., 758," to which the opinion adds: "The exceptions to the rule are so fully discussed by *Walker, J.,* in *S. v. Stancill,* 178 N. C., 683, and in a valuable note to the case of *People v. Molineux,* 168 N. Y., 264, reported in 62 L. R. A., 193-357, that we deem it unnecessary to repeat here what has there been so well said on the subject."

The rule applies to charges of abortion, and, likewise, the exception is under some circumstances applicable.

It is noted, however, that the evidence of the commission of other offenses is competent to show *quo animo,* intent, design, guilty knowledge, or *scienter,* "when such crimes are so connected with the offense charged as to throw light upon the question." To like effect is the decision in *S. v. Stancill, supra,* to which reference is there made, and *S. v. Dail,* 191 N. C., 231, 131 S. E., 573.

It is also noted that in *S. v. Weaver* (104 N. C., 758), the case cited as authority for the declaration that "proof of other like offenses is also competent to show the identity of the person charged with the crime," the Court was dealing with quite different state of facts from that in hand. There the Court held that "it is an established rule of evidence that 'when, on a trial for larceny, identity is in question, testimony is admissible to show that other property which had been stolen at the same time was also in the possession of the defendant when he had in possession the property charged in the indictment.' " In other words, "in a prosecution for one crime, proof of another direct substantive crime is never admissible unless there is some legal connection between the two, upon which it can be said that one tends to establish the other or some essential fact in issue. The Courts stress the importance of this requisite, due to nature and prejudicial character of such evidence. The question of relevancy is obviously one to be decided in the light of the facts and circumstances in the particular case." 20 Am. Jur., 298, Evidence, Sec. 316.

When these principles are applied to the charge of abortion, we find in this State, the case of *S. v. Brown,* 202 N. C., 221, 162 S. E., 216, where this Court held that upon the trial of a physician for procuring an abortion testimony of a conversation between the physician and the woman as to an abortion about four months prior to the time in controversy, is irrelevant and incompetent and its admission in evidence is prejudicial to defendant and constitutes reversible error.

Also, it is stated in 1 Am. Jur., Abortion, 42, that "if the accused admits the performance of the operation but claims it was a necessary one, or that he so believed, and that he performed it without criminal intent, evidence that he had performed other criminal operations is admissible. But where there is no intimation by the accused that he performed the operation or that it was necessary to save the life of the woman and the State proves the commission of the act and the lack of necessity of performing the operation the intent is shown and evidence of other abortions on the woman is not relevant or competent."

To like effect are well reasoned decisions of the courts of other states. See *Clark v. Commonwealth* (Ky.), 63 N. W., 740; *S. v. Cragun* (Utah), 38 P. (2d), 1071; *Brunet v. The King,* 1928 Canada Law Reports, 375.

In the *Clark case* it is stated: "The question presented for our decision is, is it competent, in the investigation of a charge of murder, to allow evidence against the accused that he had committed other distinct acts entirely disconnected with the one under investigation, for the purpose of showing his probable guilt with reference to the act for which he was being tried? The argument of the Attorney-General is, and doubtless it was the view of the trial judge, that the facts above stated were admissible for the purpose of proving intent or motive on the part of the accused. It has been held, and such seems to be the settled law, that a physician may commit an abortion upon a woman, when, in his opinion, it is necessary to do so to save her life; or another may commit the abortion under the advice of a physician that it is so necessary . . . If it was shown or admitted by the defendant that he had committed the abortion, but attempted to justify it upon the ground of necessity, it is clear that the evidence indicated above would have been competent to prove his motive and intent, and to rebut or negative the idea that he was acting upon his professional judgment, and under a necessity of saving the life of the mother. In the case at bar the purpose and effect of the evidence was not so much to show intent or motive, as it was to establish primarily the guilt of the accused of having perpetrated the act of abortion. In the opinion of the majority of the Court, the admission of this evidence was error, and that it should have been rejected. We are further of the opinion, however, that it would have been competent, as above suggested, as affecting intent or motive, provided there had been proof or admission

that defendant had committed the acts resulting in the abortion, and undertook to justify that act under the plea of necessity."

And in *S. v. Cragun, supra,* a case in which decisions of many jurisdictions are fully discussed in the opinion and concurring opinion, this headnote epitomizes the holding of the Supreme Court of Utah: "In abortion prosecution, where evidence showed that accused's attempt to procure miscarriage was not in effort to save the life of prosecutrix, and accused did not claim accident or mistake, admission of evidence that accused had committed abortion on another woman prior to offense for which he was being tried, held prejudicial error."

In the case of *Brunet v. The King, supra,* the Supreme Court of Canada, after stating the question: "Was the evidence of a previous crime committed by the accused admissible?", first refers to the rule applied in the case of *The King v. Bond,* 1906—2 KB, 389, approved by 7 to 2 decision, that where it was not disputed that the accused used instruments, the defense being that they were used for a lawful purpose, the evidence given that the accused had on previous occasion used similar instruments on a certain woman to procure a miscarriage was admissible as proof of intent. And, then, referring to the case in hand, the Court said: "In the present case there was no question of proving the intent of the accused in performing an operation, the sole question being as to whether he was the party who did perform it. All the evidence, therefore, offered to show the accused had performed an illegal operation on Alice Conture in 1926 was inadmissible . . ."

While these opinions of other courts are not controlling on this Court, they lend support to our view that, on the facts of the case, as revealed by the record on this appeal, the evidence of other offenses admitted over objection of defendant was incompetent and irrelevant, and constitutes error.

Now, as to the second contention of the State, that in any event the error was cured by the later instruction of the court. It is apparent that the trial judge, when he reached the conclusion that the evidence was inadmissible, did all that he could do to remove the harmful effect of it. But it had been with the jury over night, and must have found lodgment in their minds. And evidence tending to show that defendant committed other like offenses is calculated to prejudice the defendant in the minds of the jurors, and was not subject to correction. *S. v. Little, ante,* 417, 45 S. E. (2d), 542. Conviction of a defendant under such circumstances ought not to stand.

Evidence of this character has been the subject of severe condemnation by other courts. For instance, in the case of *Commonwealth v. Shepard,* 1 Allen's Reports, 575, *Bigelow, C. J.,* of Supreme Judicial Court of Massachusetts, characterizes "evidence of another act of embezzlement by

defendant" as "a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him, and for which he is on trial, but also because it may lead the jury to violate the great principle, that a party is not to be convicted of one crime by proof that he is guilty of another." And in *S. v. Smith* (Wash.), 174 Pac., 9, the Supreme Court of Washington says: "There is no more insidious and dangerous testimony than that which attempts to convict a defendant by producing evidence of crimes other than the one for which he is on trial."

Let it be noted that though defendant has been indicted under two separate bills of indictment, No. 17A for abortion, and No. 17B for murder, which were consolidated for trial, as hereinabove first stated, the jury returned a verdict of guilty only of the charge contained in No. 17A, without saying anything in respect of the charge in No. 17B. This is equivalent to a verdict of not guilty on the charge in No. 17B. See *S. v. Taylor,* 84 N. C., 773; *S. v. Hampton,* 210 N. C., 283, 186 S. E., 251; *S. v. Coal Co.,* 210 N. C., 742, 188 S. E., 412; *S. v. Delk,* 212 N. C., 631, 194 S. E., 94. Hence, the case will go back for re-trial only as to the charge of abortion contained in the bill of indictment No. 17A.

New trial.