**Robert Linwood STEVENS, Appellant,**

v.

**WARDEN, MARYLAND PENITENTIARY, Appellee.**

**No. 10098.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 5, 1966.

Decided Sept. 16, 1966.

David E. Belcher, Baltimore, Md. (court-assigned counsel), for appellant.

Julius A. Romano, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Ronald P. Sokol, Charlottesville, Va., amicus curiae.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

**HAYNSWORTH, Chief Judge.**

In this habeas corpus proceeding, the appeal appeared to present a substantial question under Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977, if that decision was to be given a retroactive effect. To consider the question of the retroactivity of *Escobedo* and whether its principle would require issuance of the writ in this case, the case was heard by the Court en banc. Thereafter the Supreme Court in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, held that *Escobedo* should not be given retroactive application to trials commenced before that opinion was announced. Stevens was tried in 1962, more than two years before *Escobedo* was decided, so the principal questions which the appeal appeared to present have now been resolved by *Johnson*.

There is a remaining question about the voluntariness of the confession.

Stevens and three others, Damron, Giles and Cantler, planned to rob a Mrs. Baker who lived in the same general residential section of Baltimore. Damron had done repair work for Mrs. Baker and had been called by her to come to her house to repair some plumbing. He reported to the other three that Mrs. Baker had approximately $60,000 hidden in the vicinity of the kitchen.

Their plan was that Stevens would go with Damron, linger near the door while Mrs. Baker was showing Damron the work to be done and secretly admit Giles and Cantler to the house. If Mrs. Baker discovered Giles and Cantler before Damron and Stevens departed, they were to stage a fight, but otherwise Damron and Stevens were to depart in apparent peace, leaving a defenseless Mrs. Baker to be handled by Giles and Cantler.

In its early stages everything went according to the plan. Stevens admitted Giles and Cantler to Mrs. Baker's house while she was preoccupied showing Damron the faulty plumbing. They were not discovered by Mrs. Baker until they confronted her after Damron and Stevens had left.

Stevens had supplied Giles and Cantler with some ladies' stockings to be used to

bind Mrs. Baker and to keep her quiet while they ransacked the house. They did bind her, but they became much more violent than had originally been contemplated when they failed to discover any substantial sum of money. Having found only $4.00 in cash, they demanded of her information about where the supposed hoard was kept. They beat her; they kicked her; they mutilated her. Seventeen bones, including a vertebra, were broken as was her nose. They finally left her in a bedroom, still bound and mortally wounded, after setting a fire in another bedroom. Mrs. Baker was discovered by firemen who extinguished the blaze and heard from her before she died a brief recital of what happened.

Stevens lived with his sister and brother-in-law, Whitaker, and it was in Whitaker's house that the four made the plans for the robbery. Whitaker overheard them and was invited to participate, but he declined to do so. He was also cooperative with the police, and he told them that he had heard Damron, Stevens, Giles and Cantler planning to rob someone in the vicinity. Damron was already under suspicion so that, with the information they had gained from Whitaker, Damron and Stevens were arrested when they were encountered together in a tavern. Giles and Cantler were arrested later.

At the police station, Stevens was told that anything he said "had to be voluntary." He was not otherwise advised of his rights. He was only nineteen years old, but he had previously been convicted of other offenses.

Stevens was questioned about the crime. He denied knowledge of it. They told him what they had learned from his brother-in-law, Whitaker, and they brought Whitaker into the interrogation room to obviate any doubt in Stevens' mind that the policeman's statement of Whitaker's revelations was true. Whitaker came in weeping, informed Stevens

that he had told the police and that he thought Stevens should tell the truth. Whitaker was led away and Stevens promptly told the entire story.

At the trial, Stevens' confession was introduced in evidence without objection. Stevens had told his lawyer that his statement, made after he had been in custody only approximately an hour and a half, was entirely voluntary.

Tried by two Judges, sitting without a jury, Stevens was found guilty of first degree murder and of robbery. He was sentenced to life imprisonment on the murder charge and to a concurrent term of ten years on the robbery charge. The Maryland Court of Appeals affirmed the conviction. Stevens v. State, 232 Md. 33, 192 A.2d 73, and the Supreme Court denied a writ of certiorari. Stevens v. State of Maryland, 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115. Thereafter Stevens sought postconviction relief in the Maryland courts, and its denial was affirmed by Maryland's Court of Appeals. Stevens v. Warden, 237 Md. 611, 205 A.2d 213. Stevens then filed a petition for a writ of habeas corpus in the District Court. The District Judge reviewed the record made at the plenary postconviction hearing in the state court as well as the record of the initial trial. He accepted the state court findings and dismissed the petition without a hearing. It is from that order that Stevens has appealed.

In the postconviction hearing in the state court, Stevens contended that at the police station the policemen threatened to lock up his brother-in-law, Whitaker, unless Stevens confessed, and it was that threat which induced the confession. The policemen denied it, asserting that Whitaker had been cooperative and they had no reason to prefer charges against him.[1] They merely brought him in to demonstrate the truth of what they had told Stevens. The court found that no such threat had been made, and the finding is adequately supported by the testimony of the policemen.

---

1. Actually, Whitaker was in custody, and it may be that the time of his release was advanced by Stevens' confirmation of Whitaker's story.

■ We cannot hold this confession involuntary under the standards which we are to apply under the direction of Johnson v. State of New Jersey. Confronting Stevens with his brother-in-law for the purpose of convincing him that Whitaker had, indeed disclosed what he knew apparently provoked the confession, but demonstration of the truth of their representation was not an unfair tactic nor unlawfully coercive.[2]

Throughout the subsequent proceedings, Stevens' endeavor and that of his lawyers, was to minimize his participation in the crime. In the post conviction hearing he was still expressing disbelief that he could be convicted of murder when he never intended Mrs. Baker's death.[3] When he took the witness stand to make his judicial confession, while admitting his participation in the plan to rob Mrs. Baker, he emphasized his innocence of any specific intent to do her serious bodily harm. That appears to be the likely reason for his confession. Knowing that Whitaker had talked, he must have known that he could not convincingly deny any intention to inflict serious physical injury upon Mrs. Baker without admitting his complicity in the planning and the execution of the crime. He talked in the hope of exculpating himself from the murder charge, and of obtaining sympathy in the imposition of sentence. The same motive apparently was behind his testifying at the trial and making his judicial confession.

Stevens does have some reason to feel the victim of discrimination. Giles and Cantler were both convicted of murder, but Damron, tried separately, as was Stevens, was unaccountably acquitted. His active participation in the execution of the plan ended at the same time Stevens' did, but he, unlike Stevens, escaped not only the murder charge; he escaped the robbery charge as well.

Judges and many members of the public are rightfully concerned about disparity in sentences. It is a source of great misunderstanding and resentment among prisoners who find that their sentences are much harsher than those imposed upon fellow prisoners who committed similar offenses and who had similar records and backgrounds. The greatest disparity of all results when one participant in a murder is convicted while another, equally culpable, is acquitted.

It is impossible to do anything about grave disparity arising out of that circumstance, however, unless the essential and precious constitutional requirement which rigidly enforces the principle against double jeopardy is to be abandoned. From all that appears in this record,[4] Damron ought to be in prison, too, and, if he were, Stevens might not feel so much the victim of disparity and discrimination, but the fact that Damron is not in prison is neither a legal nor moral reason for releasing Stevens, who is indisputably guilty of the crime of which he was convicted.

■ Finally, Stevens contends that his arrest without a warrant was unlawful and that the claimed illegality of his detention is relevant to the question of the voluntariness of his confession. We have not considered that, for the arresting officers knew of the murder-robbery, and, with the information they had obtained from Whitaker, they clearly had probable cause to believe that Stevens was one of the perpetrators. His arrest in the tavern was not unlawful.

■ It is also contended that the District Judge should have held a plenary hearing, but a full hearing with the assistance of an able lawyer had been held in the state court. There was adequate basis for a finding that a full and fair hearing had been held, and that the record supported the state court's find-

2. Cf. Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265.

3. Of course, he did expect Giles and Cantler to assault her, even supplying them

with the stockings with which to bind her.

4. We have not seen the record of Damron's trial, of course.

ings. Under the circumstances, a repetitious hearing in the District Court was unnecessary. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

Affirmed.