**Thomas STEM, Appellant,**

v.

**Robert TURNER, Warden, Successor to K. B. Bailey, Central Prison, Raleigh, North Carolina, Appellee.**

**No. 10734.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 1, 1966.

Decided Dec. 9, 1966.

Matthew S. Watson, Washington, D. C., Court-assigned counsel (Strasser, Spiegelberg, Fried, Frank & Kampelman, Washington, D. C., on brief), for appellant.

Ralph A. White, Jr., Asst. Atty. Gen. of N. C. (T. W. Bruton, Atty. Gen. of N. C., and Theodore C. Brown, Jr., Staff Atty., for the State of North Carolina, Raleigh, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Habeas corpus relief was denied by the district judge, without hearing, but after obtaining most of the records of appellant's trial and appellant's attempts at state post-conviction relief. Because we think the district judge should have granted a plenary hearing, we will vacate the judgment and remand the case for further proceedings, in accordance with the views expressed herein.

Upon his plea of not guilty, appellant was convicted of assault on a female, with intent to rape, upon a nine-year-old child, and sentenced to a term of fifteen years.[1] The crime was allegedly committed on September 20, 1958, and appellant was tried and convicted in November of that year. At the trial, appellant was represented by two attorneys employed by him. The judgment was not appealed, but appellant has asserted alleged legal improprieties in his trial numerous times in numerous forums.[2] Only two of the unsuccessful attempts need concern us—a denial of post-conviction relief, and a denial of a writ of habeas corpus, both by the state courts.

After his efforts for state relief were unsuccessful, appellant sought the issuance of a writ of habeas corpus from the district court, alleging, in substance, that he had been denied effective representation of counsel by the incompetency of his

---

1. Appellant's indictment charged appellant with rape, a capital offense. He was found not guilty of rape, but guilty of the lesser crime included in the offense charged.

2. A *pro se* petition for certiorari to review the conviction was denied by the North Carolina Supreme Court on November 21, 1961. Represented by privately retained counsel, appellant then sought, and was denied, relief under the North Carolina Post-Conviction Hearing Act (N.C. G.S. § 15–217 et seq.), after he was given a plenary hearing. A petition for writ of certiorari to the North Carolina Supreme Court to review that denial was denied November 26, 1963, and a petition for a writ of certiorari was thereafter denied by the Supreme Court of the United States. Stem v. North Carolina, 379 U.S. 849, 85 S.Ct. 90, 13 L.Ed.2d 53 (1964). Next, a *pro se* petition for a writ of habeas corpus was denied by the Wake County [North Carolina] Superior Court, on April 15, 1965, and certiorari to the North Carolina Supreme Court denied June 2, 1965.

attorneys, that evidence illegally obtained had been used to convict him, that the trial judge had improperly directed a verdict of guilty against him, and that he had been denied his right to appeal because he was indigent and his counsel failed to advise him of his right to appeal in forma pauperis. The district judge found that the claimed denial of the right to appeal had been fully litigated in the state courts and, upon a review of the transcript of appellant's post-conviction hearing, concluded that he had received a full and fair evidentiary hearing, but had failed to sustain his allegation. The district judge accepted the findings of historical facts and concluded that appellant's right to appeal had not been denied him. As to his other contentions, the district judge concluded that, although formally raised in the pleadings, appellant had not produced proof to sustain them in any of the state court proceedings and .that, therefore, he had failed to exhaust the remedy available to him under the North Carolina Post-Conviction Hearing Act.

An examination of the post-conviction transcripts satisfies us that the district judge was correct in his determination that appellant had received a full and fair evidentiary hearing in the state court, that the findings of the state judge who denied post-conviction relief were amply supported, and that appellant failed to establish a denial of his right to appeal which would warrant a district court in hearing this aspect of the case anew. It was proper for the district judge to accept the findings of historical facts, under these circumstances. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Stevens v. Warden, 366 F.2d 565 (4 Cir. 1966); Near v. Cunningham, 313 F.2d 929 (4 Cir. 1963); Davis v. State of N. C., 310 F.2d 904 (4 Cir. 1962).

We disagree, however, that appellant has available a state remedy to vindicate the other claimed denials of constitutional rights, assuming that appellant can establish them by proof. In his application for a state writ of habeas corpus,

appellant alleged these denials, but that writ was denied without hearing. These questions could have been raised in appellant's application for post-conviction relief, made before his application for a state writ of habeas corpus. The North Carolina Post-Conviction Hearing Act provides that questions " * * * not raised or set forth in the original or any amended petition shall be deemed waived." N.C. General Statutes § 15–218.

While the Attorney General of North Carolina advises us that it has been the practice in the trial courts to consider claims which were not raised and decided in previous applications, the North Carolina Supreme Court has not had occasion to speak definitively on the practice. Recently, in McNeil v. State of North Carolina, 368 F.2d 313 (4 Cir. 1966), we concluded that, since the North Carolina statute on post-conviction relief clearly prohibits raising a ground in a successive petition which could have been raised earlier, and, in regard to the point in issue in the *McNeil* case, North Carolina case law held the point waived unless it had been raised prior to entry of plea, " * * * we must hold that the petitioner now has no rights available under the state law which require exhaustion." Absent a definitive state adjudication to the contrary, we deem the professed language of the statute to prevail over trial court practice and conclude that appellant no longer has an available state remedy.

We are met, therefore, with the issue of whether, from our examination of appellant's allegations, and the transcript of his unsuccessful attempts to obtain state post-conviction relief, appellant was entitled to a plenary hearing. It is first necessary to summarize the context in which appellant's allegations of denial of constitutional rights are made.

Testimony was offered at appellant's trial at the behest of the state to show that the young girl came to his house to request permission to obtain fruit from a pear tree in his back yard. Appellant invited her into the house, took her to

the bedroom, removed her underpants and attempted to have relations with her. Upon her plea that she wished to use the bathroom, she was permitted to go to the bathroom. Upon her return, appellant made a second carnal attempt; and upon her plea that she needed to go to the bathroom again, she went there, locked the doors and escaped through a window by breaking out the screen. She then went to the cousin's home, nearby, obtained other underpants and was returned to her parents.

The facts were all established by the testimony of the child, corroborated as to the consistency of her version of the events, by her cousin, uncle, parents, and police officers. Medical evidence was offered to show the likelihood that a carnal attempt had been made on her, but the evidence was not conclusive to show actual rape. Other evidence, sponsored by police officers, was the child's underpants, found at the bottom of appellant's bed, and testimony concerning two used contraceptives found on the chest of drawers in appellant's bedroom, and the fact that the bathroom door was found locked on the inside and the screen broken out. The underpants were admitted into evidence as an exhibit, together with photographs of the condition of the bedroom, bathroom and bathroom screen.[3]

The underpants, photographs and testimony about the used contraceptives were obtained in the following manner: The incident with the child occurred in the morning before lunch. Appellant was arrested sometime before noon, without a warrant, at his home. No search of the premises was made at the time of arrest. Since he was the only person occupying the house where he lived, the arresting officers, upon taking him into custody, locked the house and retained the key. Later in the afternoon, the police officers, using appellant's key, returned to his home and searched it. They recovered the underpants, made the observations they testified about at the trial and took the photographs. Nowhere in the record does it appear that the officers had a search warrant, or that appellant consented to the search.

■ It was stipulated at the post-conviction hearing that the child did not appear before the grand jury which indicted appellant. The record of appellant's trial does not show any objection to the indictment. The record does not show any objection to the use of the evidence obtained as a result of the search of appellant's home or testimony concerning it, notwithstanding that North Carolina law renders incompetent evidence obtained by an illegal search. North Carolina G.S. § 15–27; State v. Coffey, 255 N.C. 293, 121 S.E.2d 736 (1961). By the terms of § 15–27, the prohibition against the use of evidence obtained as a result of an illegal search extends to "facts discovered or evidence obtained" by reason of the search; presumably, therefore, testimony concerning observations made during the search would be barred. Cf. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Appellant's counsel at his trial were both unaware of who appeared before the grand jury, other than such knowledge as they might have from examining the list of names endorsed on the indictment. Whether these attorneys knew the circumstances under which appellant's house was searched after his arrest is not clear from the post-conviction transcript. We are told that the trial judge's charge to the jury was not transcribed and could not be made part of the record.

■ Treating appellant's allegations in his petition for a writ of habeas corpus in the light most favorable to him and examining the transcripts of appellant's trial and attempts at post-conviction relief in a similar vein, we think that appellant was entitled to be heard by the district court, because we con-

3. Appellant, who elected to testify, denied any carnal attempt on the child. He attempted to explain the presence of the incriminating articles in his bedroom, and offered testimony of neighbors that, even though the weather was warm and windows were open, they did not hear the outcries that the child claimed she made.

clude that appellant has raised an issue of ineffectiveness of his original trial counsel amounting to denial of counsel which requires adjudication. Owsley v. Peyton, 368 F.2d 1002 (4 Cir. 1966); Kearney v. Peyton, 360 F.2d 589 (4 Cir. 1966); Horne v. Peyton, 356 F.2d 631 (4 Cir. 1966); Root v. Cunningham, 344 F.2d 1 (4 Cir. 1965); Snead v. Smyth, 273 F.2d 838 (4 Cir. 1960).

Appellant contends that because the child did not appear before the grand jury, it can be inferred, from the evidence adduced at the trial that the child was the only competent witness who could testify, under the usual rules of evidence, to the fact that a crime was committed.[4] From this premise, appellant argues that, under North Carolina law, the indictment was fatally defective;[5] appellee contends vigorously to the contrary.[6]

■ The North Carolina cases, cited by the parties, are not entirely compatible, each with the other. Dicta in the line cited by appellant appears to conflict with dicta in the line cited by appellee; much of the confusion seems to arise from use of the "incompetency," used in some of the opinions to refer to a disability to testify (as wife against husband in State v. Coates, 130 N.C. 701, 41 S.E. 706 (1902)), and in others to refer to admissibility of testimony of persons not under a legal disability to testify. Intertwined as part of the problem is the familiar rule, followed by North Carolina, that public policy usually prohibits an inquiry into the proceedings of a grand jury to show the nature and character of witnesses who appeared before it and, hence, the admissibility of their testimony, judged by the usual rules of evidence. State v. Blanton, 227 N.C. 517, 42 S.E.2d 663 (1947).

■ We read, however, the latest North Carolina decision, State v. Squires, 265 N.C. 338, 144 S.E.2d 49 (1965), as definitively holding that an indictment is not invalid although based solely on hearsay testimony. There, a defendant, convicted of having carnal intercourse with his minor daughter, pleaded not guilty and moved to quash the indictment returned against him. In a *per curiam* opinion, the Supreme Court of North Carolina stated simply: "Disregarding the question whether the motion to quash was timely made (after plea) the reason assigned (hearsay testimony before the grand jury) was insufficient to invalidate the indictment. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397." 144 S.E.2d at p. 50.[7] Citation of the *Costello* case makes manifest the holding, because *Costello* was concerned solely with whether an indictment was valid when based exclusively on

4. Other evidence on this point was the testimony of a police officer who testified at the post-conviction hearing that he appeared before the grand jury, that the child's mother did also, and that he "thought" she was the only other witness. The indictment lists nine witnesses, including the child, but there is a check mark beside the names of only the mother and the officer. It was stipulated that the child did not appear. Whether the others appeared is thus left open, as is the question of the extent of the knowledge of those who did appear.

5. Reliance is placed on State v. Goldberg, 261 N.C. 181, 134 S.E.2d 334 (1964); State v. Choate, 228 N.C. 491, 46 S.E.2d 476 (1948); State v. Blanton, 227 N.C. 517, 42 S.E.2d 663 (1947); and State v. Coates, 130 N.C. 701, 41 S.E. 706 (1902).

From these authorities appellant argues that solely hearsay evidence before the grand jury is legally insufficient to support an indictment.

6. Appellee relies on State v. Levy, 200 N.C. 586, 158 S.E. 94 (1931); State v. Goldberg, supra, n. 5; State v. Squires, 265 N.C. 388, 144 S.E.2d 49 (1965). Appellee contends that the North Carolina cases, at most, hold that an indictment may not be based solely upon the testimony of witnesses under a disability to testify, but that they, especially State v. Levy, supra, do not apply strictly the hearsay rule in grand jury proceedings.

7. The case also concerned itself with the competency of the minor child to testify at the trial. The trial court's determination of competency was upheld.

hearsay evidence before the grand jury; it held the indictment valid.[8]

Because of our conclusion that North Carolina permits an indictment based solely on hearsay testimony, we conclude, also, that ineffective representation in the failure to question the indictment is thus not alleged because the indictment was unassailable on the ground assigned. However, ineffective representation was alleged by the failure to object to the fruits of the search.

If we assume that the search was illegal, i. e., that in fact there was no warrant and appellant did not consent, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was inapplicable, because appellant was tried and convicted in 1958 and his conviction became final before Mapp was decided. Linkletter v. Walker, 381 U.S. 618, 619, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). But a failure by trial counsel to investigate, or vigorously to press, the illegality of the search under North Carolina law would be strong evidence of ineffectiveness of counsel unless waiver, measured by federal standards, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1953); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966), occurred as an element of trial strategy. Certainly, in a case where the word of a child was pitted against the word of a divorced adult male, the probative effect of the fruits of the search, if illegally obtained, was highly prejudicial. Counsel's failure to press any objection to the use of this evidence is deserving of plenary hearing by the district judge to the end that effectiveness of counsel may be ascertained.

We do not hold, of course, that the failure to object to the introduction of the fruits of the search, if determined not to have been the result of a deliberate choice of strategy, always requires an ultimate conclusion that the lawyers' representation was so ineffective as to amount to a deprivation of due process. The Fourteenth Amendment does not require perfection of the lawyer, and one slip does not necessarily invalidate the proceedings. But if it appears that the lawyer was negligent in one particular with resulting prejudice to his client's defense, judicial appraisal of his entire conduct becomes requisite. A brilliant performance in most aspects of the defense can redeem a blunder, but a fatal mistake in a context of generally slovenly representation may require a conclusion that the quality of the representation was below the minimum required by the Constitution. If, therefore, the proof establishes that the failure to object to the admission of the fruits of the search was a negligent mistake on the part of the lawyers, judicial evaluation of their overall effectiveness in representing this defendant is also required.

Finally, the district judge should explore appellant's contentions that a verdict was directed against him. Even though the transcript of the trial record is not complete, appellant's testimony should be weighed against others present who may have a recollection of what the jury was told. Perhaps the trial judge has either a recollection or trial notes which would enable him to certify what took place. 28 U.S.C.A. § 2245. Appellant should have the opportunity to establish this and his other contention, if he can, so that his claim to the writ can be adjudicated on the merits.

Judgment vacated and remanded.

8. Even earlier, in State v. Goldberg, supra, n. 6, the Costello case was cited with approval. The holding in Goldberg was not based exclusively on Costello; because it was not shown conclusively that only hearsay evidence was the basis for the indictment. Thus, the court could invoke the rule of State v. Choate, supra, n. 5, that a court would not reopen the grand jury proceedings to determine by what evidence the grand jury was persuaded.