STATE v. ELLA NORWOOD.

*Murder—Deadly Weapon—Putting Pins in Child's Mouth, Causing Death—Presumption of Malice.*

1. The question whether an instrument with which a personal injury has been inflicted is a deadly weapon often depends more upon the manner of its use than upon the intrinsic character of the instrument itself.

2. The pushing of a pin down an infant's throat, whereby death ensues, is killing with a deadly weapon, and, if done deliberately and with the purpose of killing, is murder in the first degree.

3. Matters of extenuation and excuse, or discharge by reason of insanity, must be shown by him who sets it up, and where no testimony is offered by one on trial for murder to show insanity, the presumption of sanity is unrebutted.

Indictment for murder, tried before *Shuford, J.*, and a jury, at March Term, 1894, of DURHAM Superior Court.

It appeared in evidence that the defendant pushed two pins down the throat of her infant bastard child, and thus caused its death. One of the pins was a black pin, worn by defendant in her hair, the other worn in her dress.

The mother of the defendant testified that after the autopsy the physicians gave her the two pins taken from the body of the child, which she recognized as pins worn by the defendant. "Next morning," the witness said, "I asked Ella about the pin she wore in her hair. She began feeling about the bed for it, as if it had been lost in the bed. I said to her, 'What did you murder that baby for?' She said, 'Do you know who did it?' I told her 'Yes.' She then asked if anybody else knew it. I asked her what made her do it. She said, 'I had been thinking how I could get rid of the boy. Then he began to cry, and I stuck one of the pins down his throat, and he strangled so that I sent Mattie after Miss Bell.'" Witness further said that Ella told her that she wanted to get the boy out of the way because it would be such a bother to her in the spring, when she wanted to run around and have some fun.

Dr. J. M. Manning, who, with Dr. Cheatham, made an autopsy, testified: "We found in the stomach of the child this dress-pin, and in one lung, which was very much congested, we found the black pin. In my opinion, this black pin caused the death of the child. The baby was either crying or laughing when the pin was swallowed and was

STATE *v.* NORWOOD.

thus caused to go into the lungs. The windpipe was very much congested."

His Honor, after fully defining the crime of murder in the first and second degrees, among other things, charged the jury as follows:

"The generally accepted meaning of the word premeditated, is a prior determination to do the act in question; but it is not essential that this intention should exist for any considerable period of time before it is carried out. If the determination is formed deliberately, and upon due reflection, it makes no difference how soon afterwards the fatal resolve is carried into execution. If the defendant in this indictment, while lying on her bed with her baby by her side, conceived the thought of getting rid of her child, and concluded to destroy or kill it by putting the pins which have been shown in evidence in its throat for the purpose of strangling or killing it, and immediately thereafter carried out this resolve by sticking the pins down its throat, and thereby strangling and killing the child, the defendant would be guilty of murder in the first degree—malice would be presumed, and the determination and premeditation contemplated by the statute would be shown, if the jury find the facts so to be."

To this charge the defendant excepted.

His Honor also instructed the jury as to the burden of proof, stating to the jury that the burden was on the State to prove, beyond a reasonable doubt, the intentional killing of the child by the defendant, and told the jury that if they had any reasonable doubt that the defendant intentionally put the pins in the child's mouth or throat with the view of killing it, or had any reasonable doubt that the pins caused the death of the child, then they should acquit.

The Court did not submit to the jury any view of murder in the second degree, or manslaughter, though requested so to do by counsel for the defendant, and for this omission counsel for defendant excepted.

There was a verdict of guilty, and from the judgment thereon the defendant appealed, assigning error in the charge, and error in refusing various instructions asked for.

*The Attorney General,* for the State.
*Messrs. C. F. Turner* and *F. A. Green,* for the prisoner (appellant).

AVERY, J.: If the prisoner did not put the pins in the child's mouth, or if, though she placed them there, they were not the instrumental cause of its death, she was not guilty, and so the Court told the jury. If the jury found, as they must have done under the instructions of the Court, that she brought about its death, it was a killing with a deadly weapon. The question whether an instrument, with which a personal injury has been inflicted, is a deadly weapon, depends not infrequently more upon the manner of its use than upon the intrinsic character of the instrument itself. *State* v. *Huntley,* 91 N. C., 617. We may expect death to ensue from pushing such a pin down the throat of an infant, just as we may look for death or serious bodily harm as a consequence of firing a pistol into a crowd of human beings, or at a particular person. The intentional killing with a deadly weapon, when proved or admitted, raises a presumption of malice, and such evidence would, before the enactment of the recent statute establishing and defining the two grades of that crime, have amounted to *prima facie* proof of murder. But now, though the fact of such killing still gives rise to the presumption of malice, and is *prima facie* evidence of murder in the second degree, it does not show that the act was done deliberately or after premeditation. *State* v. *Fuller,* 114 N. C., 885; 2 Bishop Cr. Law, sec. 703; *State* v. *Dunn,* 38 Penn. State, 9; *People* v. *Cox,* 76 Cal., 285. In order to conviction of murder in the first degree, as the Judge below properly instructed the jury, it was necessary

that the State should show that the prisoner deliberately determined to take the child's life by putting the pin or pins into its mouth, and thereupon, it being immaterial how soon after resolving to do so, carried her purpose into execution and thereby caused its death. As to the *quantum* of proof necessary to conviction of murder in the first degree, the Court adopted the language of the prayer submitted for the prisoner, and of course left no ground for objection.

We cannot conceive how the jury were misled by the failure of the Court to state, in terms, that the pins used in the manner described by the witnesses would be deadly weapons, or by the general instruction that the unlawful killing, if done, would, in this case, have raised a presumption of malice, since the jury were explicitly made to understand that the prisoner was not guilty of any offence, unless the death of the infant was caused by her pushing the pins into its mouth. So it was impossible under the instructions given and upon the evidence to find that there was an unlawful killing, unless it was effected by such use by her of the pin or pins.

" By our decisions," said the Court in *State* v. *Vann*, 82 N. C., 631, " matters of extenuation and excuse, or discharge by reason of insanity, must be shown by him who sets it up." The prisoner offered no testimony tending to show insanity, and the presumption in favor of sanity was therefore unrebutted.

We concur with the Judge below in the view that there was no aspect of the evidence in which the offence of killing, if done by the prisoner in the manner described by the witnesses (and so it must have been done if at all), could be mitigated to manslaughter. It is possible that in such a case there might have been testimony tending to show that the killing was done by putting pins into the mouth of an infant carelessly, not purposely, and if any such evidence had been offered, it would have been proper to have submitted to the jury, with suitable instructions, the question whether the mitigating circumstances relied on were proved.

After considering the carefully prepared arguments of counsel upon the assignments of error, we feel constrained to hold that the judgment should be affirmed.

Affirmed.