## STATE v. ANDY LAUGHTER.

(Filed 15 May, 1912.)

**Homicide—Dying Declarations—Res Gestæ—Evidence.**

> Upon the trial of the husband for the homicide of his wife, there was evidence tending to show that the deceased was in a delicate condition, and had bruises upon her arms, back, and abdomen, and a wound or rupture of the inside lining of her womb, and that her death resulted from a small clot of blood in the right ventricle of her heart which the wounds and bruises, alleged to have been inflicted by her husband, would have produced. Deceased had said that she would die: *Held*, it was competent as a dying declaration, to prove that the deceased said, immediately preceding her death, that she expected to die, and at the same time stated that her husband had beaten her to death.

APPEAL by defendant from *Long, J.,* at Fall Term, 1911, of POLK.

This is an indictment of the defendant for the murder of his wife, and the only question in the case relates to the competency of the dying declarations of the wife as to the cause of death. There was evidence tending to show that her husband had beaten her severely with a hickory stick at their home on 28 May, 1911, and that she left that day and went to her sister's, and from there she went to the home of defendant's sister, and then to the home of her own sister, Mrs. Hendrix, where she arrived on Sunday, 11 June, 1911.

W. A. Hendrix testified that when she came to his house she looked very badly, and very soon after she came she lay on the bed, and that there were bruises on her body, several on her back and one on her side, "which was black and blue and half as big as a man's hand." She told Hendrix and his wife on Monday night, 12 May, 1911, that she could not live and that she expected to die, that she was going to die, and she could not live in her condition. This was repeated several times on Tuesday morning about 6 o'clock, and she died about 11 o'clock the same morning.

The mother of the deceased testified that she had hemorrhages from her womb several days before she died, and had pains in her abdomen.

Dr. Brockman stated that he made an examination of the deceased and found bruises or lashes on her arms and back and evidences of a wound or bruise on the abdomen and a wound or rupture of the inside lining of the womb. He also found a dead fetus in the womb which was decomposed and a small clot of blood in the right ventricle of the heart. He testified that death evidently followed the formation of this clot in the heart in a very few minutes, and that the condition of the womb and the fetus would account for the clot of blood in the heart.

There was evidence tending to show that deceased fell in the arms of her sister and died very suddenly after stating again that "she was going to die."

The State then offered to show by W. A. Hendrix and his wife what she had said as to the cause of her condition and subsequent death. The defendant objected, but the evidence was admitted, and defendant excepted. The witnesses testified that deceased had said that her husband had beaten her to death. She remonstrated with him about drinking so much, and he went out and got a stick and "fixed her up; that he killed her." The court restricted the proof of the State to the declaration of the deceased at the time she said that she expected to die. The prisoner was convicted of murder in the second degree, and appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Smith, Shipman & Justice for defendant, appellant.*

WALKER, J., after stating the case: While the sense of impending death is considered by the law as sufficient, a guaranty of truth as the solemnity of an oath, a dying declaration cannot be subjected to the other test, there being no opportunity for cross-examination and nothing to meet the objection to it, as hearsay, which will answer as an equivalent for such an examination; hence the exception to the hearsay rule in favor of dying declarations rests solely upon the ground of necessity and public policy; for if they were not admitted as evidence it would be impossible to convict in a case of homicide, the knowledge of the facts, in many cases, being confined to the

party slain and the perpetrator of the crime; but as the exception can only be sustained upon the ground of necessity, the declaration is admissible only in indictments for homicide, and is restricted to the act of killing and the circumstances immediately attending the act and forming a part of the *res gestæ.* *S. v. Shelton,* 47 N. C., 360; *S. v. Jefferson,* 125 N. C., 712. The rule for the admission of such testimony is thus stated in *S. v. Mills,* 91 N. C., 581, quoting from Taylor on Evidence, sec. 648: "(1) At the time the declaration was made, the declarant should have been in actual danger of death; (2) He should have a full apprehension of his danger; (3) Death should have ensued."

The evidence in this case showing the declarant was *in extremis,* and was conscious or apprehensive of approaching death and had abandoned all hope of recovery, is quite as strong and convincing as was that in *S. v. Quick,* 150 N. C., 820, and *S. v. Bagley,* 158 N. C., 608. In the case last cited we said: "Dying declarations are admissible in cases of homicide when they appear to have been made by deceased in present anticipation of death. It is not always necessary that the deceased should declare himself that he believes that he is about to pass away; but all the circumstances and surroundings in which he is placed should indicate that he is fully under the influence of the solemnity of such a belief." To like effect is Wigmore on Evidence, secs. 1430 and 1442. *S. v. Brogden,* 111 N. C., 656. We held in *S. v. Tilghman,* 33 N. C., 513, that "In order to make the declarations of a deceased person evidence as 'dying declarations,' it is not necessary that the person should be *in articulo mortis* (in the very act of dying), it is sufficient if he is under the apprehension of impending dissolution, when all motive for concealment or falsehood is presumed to be absent, and the party is in a position as solemn as if an oath had been administered."

The wife of the defendant appeared to have known of her delicate condition, and to have become suddenly aware, the day before she died, that the violent assault of her husband and the injuries which he inflicted upon her would result fatally, and subsequent events disclosed, unfortunately, that her appre-

hension was well-founded. Her dissolution was impending, and no one knew it better than she did. There was no error in admitting her declarations as to the assault upon her by the defendant, the evidence showing that the wounds she received were sufficient to cause death.

No error.