CLARKSON, J., dissenting.
STACY, C. J., concurring quaere de dubiis.
ADAMS, CLARKSON, CONNOR and BROGDEN, JJ., approving another instruction as to manslaughter, assault, and assault with a deadly weapon.
Criminal prosecution tried upon the following bill of indictment:
"The jurors for the State upon their oath, present, that Gordon Watkins, Vance Mangum and Swannie Council, late of the county of Wake, on the 26th day of July, in the year of our Lord, 1930, with force and arms, at and in the county aforesaid, unlawfully, wilfully and feloniously did kill and slay Willie Bellamy, against the form of the statute in such case made and provided, and against the peace and dignity of the State."
Gordon Watkins, Vance Mangum and Swannie Council were supervisor, tractor driver and guard, respectively, of Prison Camp No. 5, Wake County, and Willie Bellamy was a prisoner assigned to work at said camp under amittimus from the city court of Raleigh.
The evidence is in sharp conflict as to the character of treatment accorded the deceased by the defendants who had him in custody while a prisoner assigned to work on the public roads of Wake County. The State contended that Bellamy's death resulted from working him in the hot sun, while sick, without adequate food, and thereafter confining him in a sweat-box for disciplinary purposes. He died at St. Agnes Hospital, 11:30 p.m. Saturday, 26 July, 1930. The cause of death was stated by the attending physician to be, "Heat prostration with convulsive seizures, producing acute congestion of brain. Contributing cause, excessive hot weather." *Page 693 
Willie Bellamy was a large, colored man who weighed about 175 or 180 pounds. The evidence tends to show that he was unruly; sullen; impudent; declined to work; refused to obey orders; and that he tried to assault the defendant Watkins.
At the close of defendants' evidence, the State called two witnesses in rebuttal, one of them Ed. Perry, a fellow refractory prisoner, who testified that, when the prisoners came into the camp from their work at the end of the half-day, noon Saturday, 26 July, Willie Bellamy "tried to drink some water from the wash basin (provided for bathing purposes). Capt. Gordon (Watkins) knocked it out of his hands and asked him what he was trying to do. He hit him on the nose with a pair of handcuffs. They carried him to the dark cell and I did not see him any more." (Cross-examination) "Capt. Gordon (Watkins) hit him on the nose with handcuffs."
All the witnesses for the defendant, who were present at the time, denied that the defendant struck the deceased with his handcuffs. The only mark on the body of the deceased was a slight abrasion on the nose, which H.P. Thompson, witness for the State, thought was caused by a protruding plank in the solitary confinement cell. He said: "It stuck out about an inch and his nose was resting on that, and it looked like that was what might have caused it."
It is not contended that the blow on the nose with the handcuffs, if made, caused Bellamy's death or contributed thereto.
The court instructed the jury that "an assault, when made with an instrument such as a pair of handcuffs, would constitute in law an assault with a deadly weapon." Exception.
Verdict: Not guilty as to Vance Mangum and Swannie Council. Guilty of "an assault with a deadly weapon" as to Gordon Watkins.
Judgment: Imprisonment in county jail for a term of six months.
The defendant, Gordon Watkins, appeals, assigning errors.
The question of assault with a deadly weapon was not the principal matter debated on the hearing, but rather the charge of manslaughter, the main contention of the State being that Bellamy's death resulted from criminal neglect on the part of the defendants.
The only evidence to support the verdict "guilty of an assault with a deadly weapon" is the bare statement of Ed. Perry (repeated on cross-examination) that the defendant, Watkins, hit the deceased on the nose with a pair of handcuffs. There is no description by the witness of the size of the handcuffs, whether large or small, nor of their weight, *Page 694 
whether heavy or light, nor of their character, whether of metal, leather or rope, nor of the manner of their use, whether a light, glancing or full-faced blow was struck. Nor were the handcuffs themselves offered in evidence. It is not contended that the assault with the handcuffs caused the death of the deceased or contributed thereto.
In this state of the record, we think his honor erred in instructing the jury that "an assault, when made with an instrument such as a pair of handcuffs, would constitute in law an assault with a deadly weapon." S. v.Smith, 187 N.C. 469, 121 S.E. 737.
Any instrument which is likely to produce death or great bodily harm, under the circumstances of its use, is properly denominated a deadly weapon. S. v. Craton, 28 N.C. 165 at page 179. But where it may or may not be likely to produce such results, according to the manner of its use, or the part of the body at which the blow is aimed, its alleged deadly character is one of fact to be determined by the jury. S. v. West,51 N.C. 505. "Where the deadly character of the weapon is to be determined by the relative size and condition of the parties and the manner in which it is used," the question is for the jury. S. v. Archbell, 139 N.C. 537,51 S.E. 801; S. v. Norwood, 115 N.C. 789, 20 S.E. 712; S. v. Huntley,91 N.C. 621. "If its character as being deadly or not depended upon the facts and circumstances it became a question for the jury with proper instructions from the court," S. v. Beal, 170 N.C. 764, 87 S.E. 416. See, also, S. v. Hefner, 199 N.C. 778; S. v. Phillips, 104 N.C. 786,10 S.E. 463; S. v. Porter, 101 N.C. 713, 7 S.E. 902; S. v. Collins,30 N.C. 407.
There are other exceptions appearing on the record worthy of consideration, but as they are not likely to arise on another hearing, we shall not consider them now.
New trial.