### STATE v. MILTON RICH.

(Filed 12 April, 1950.)

**1. Criminal Law § 34e—**

Testimony to the effect that defendant's wife, who was mortally injured, stated to the witness in the presence of defendant so that he must have heard it, that defendant "did it," is competent when the evidence discloses that the circumstances were such as to call for a denial by defendant if the declaration were not true.

**2. Criminal Law § 81c (3)—**

The admission of testimony over objection cannot be held harmful when substantially identical testimony is admitted without objection.

**3. Homicide § 18—**

When at the time of making the declaration the declarant is in actual danger of impending death, has full apprehension of such danger, and death ensues, testimony of the declaration is competent.

**4. Same—**

The competency of a dying declaration is a question of law for the trial court, and its ruling thereon will be reviewed only to determine whether there was evidence tending to show the facts necessary to support its decision.

**5. Same—**

Testimony tending to show that a doctor, after examining the victim, informed her she was approaching impending death, and that thereupon

she told him that she had been beaten by her husband and kicked in the abdomen, and that death ensued from such injury, *is held* sufficient to sustain the trial court's ruling admitting the dying declaration in evidence even though declarant herself made no statement that she believed she was about to die.

**6. Homicide § 27h—**

 Where the evidence tends to show that defendant, while drunk, beat his wife, inflicting injuries causing her death, the refusal of the trial court to submit the question of defendant's guilt of the lesser offense of involuntary manslaughter is not error.

**7. Criminal Law § 53f—**

 The explanation by the court in its charge to the jury of the reasons why the court admitted in evidence testimony of dying declarations, even though the competency of such testimony was not for the jury, will not be held for reversible error, especially when the court further charges that the weight of the declarations is a matter for the jury to consider and that the jury should not give them any peculiar weight because they were dying declarations, but only such weight as the jury should find them entitled to receive.

APPEAL by defendant from *Williams, J.,* at October Term, 1949, of SAMPSON.

Criminal prosecution upon bill of indictment charging defendant with the murder of one Irene Rich.

Defendant upon arraignment pleaded not guilty. Thereupon the Solicitor announced that the State would not ask for a verdict of murder in the first degree, but only for a verdict of murder in the second degree, or manslaughter, as the law and evidence might warrant.

Upon the trial in Superior Court, the State offered evidence tending to show that Irene Rich, the wife of defendant, was taken from her home to a hospital in Fayetteville, N. C., in the early evening of Sunday, 23 May, 1948, arriving there about 8:30 o'clock; that she was suffering from injuries evidenced by bruises on various parts of her body, particularly her stomach; that she died early the next morning as result of internal hemorrhage caused by the laceration of her liver and mesentery, which in turn was caused by a blunt instrument,—a blow to the abdomen, of recent occurrence, within a period of hours; and that defendant had inflicted such injury.

Defendant offered no evidence.

Verdict: Guilty of murder in the second degree.

Judgment: Imprisonment in the State's Prison for a term of not less than 25 nor more than 30 years.

Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Rhodes for the State.*

*Jeff D. Johnson, Jr., and Broughton, Teague & Johnson for defendant, appellant.*

WINBORNE, J.   Defendant in his brief filed in this Court presents for consideration four questions which we treat in the order and as stated.

I.   "Was there error in the admission of the hearsay statement of the witness Oscar Rich?"

This witness, as the evidence shows, was a deputy sheriff, who was called to the home of the defendant on the late afternoon of Sunday, 23 May, 1948, and was there when the defendant's wife, the deceased, was taken to the hospital, and also was with the sheriff when defendant was taken to jail.

In the course of his examination this witness was asked, "Did his wife say what caused the pain in her stomach?" (Objection. Overruled. Exception.)   The witness replied, "No, sir, she just said he did it.   I asked her what was the matter.   I said 'Irene, what in the world is the matter?', and she said 'Shine did it.' "   (Motion to strike denied. Exception.)   The objection is predicated upon the grounds that there was no evidence that defendant heard the statement of his wife, or that he apprehended the significance of it.

After reading the evidence we are unable to agree that either position is tenable.   The witness had testified, without objection, that he was called to defendant's house and found defendant's wife, the deceased, lying on a bed; that she was breathing fast, and on being asked by him how she felt, she said, "Bad"; that she had some scratches about her face and body; that defendant was there; that upon the witness saying to her, "Irene, what in the world is the matter?", she said, "Shine did it"; that "Shine" is the defendant; that on being further asked what did he do it with, she said, "With a screw driver"; that she was making complaint in the presence of her husband, and that she said, "I hurt bad, right in here" (pointing to stomach).   Then, after the question was asked and answered to which the assignment relates, the witness testified, as had the sheriff, that defendant, on the way to jail, in reply to question by the sheriff as to "what he did do, or did he beat his wife," said, "Yes, he beat hell out of her"; and on being further asked "What for," the defendant said, "Well, that's the $64 question."

This same witness also stated on cross-examination that the defendant was "well under the influence"; that he was lying on the bed with his wife, smoking a cigarette, when he, the witness, had the conversation with her; that he would say the defendant did hear the conversation; and that when his wife was put in the ambulance, he went in, caught hold

of each side of the cot and bent over and kissed her good-bye, and straightened up, the best he could, and got out and went in the house.

Thus it would seem that when the wife of defendant made the statement that "Shine did it," the circumstances were such that he was in position to hear it, and called for a denial by him if it were not true. *S. v. Jackson,* 150 N.C. 831, 64 S.E. 376; *S. v. Wilson,* 205 N.C. 376, 171 S.E. 338; *S. v. Hawkins,* 214 N.C. 326, 199 S.E. 284; *S. v. Gentry,* 228 N.C. 643, 46 S.E. 2d 863.

In *S. v. Wilson, supra,* it is said: "When a statement is made, either to a person or within his hearing, implicating him in the commission of a crime to which he makes no reply, the natural inference is that the implication is perhaps well founded, or he would have repelled it. *S. v. Suggs,* 89 N.C. 527. But the occasion must be such as to call for a reply. 'It is not sufficient that the statement was made in the presence of the defendant against whom it is sought to be used, even though he remained silent; but it is further necessary that the circumstances should have been such as to call for a denial on his part, and to afford him an opportunity to make it.' 16 C.J. 659.

"Silence alone, in the face or hearing of an accusation, is not what makes it evidence of probative value, but the occasion, colored by the conduct of the accused or some circumstance in connection with the charge, is what gives the statement evidentiary weight. *S. v. Burton,* 94 N.C. 947; *S. v. Bowman,* 80 N.C. 432.

"The general rule is that statements made to or in the presence and hearing of a person, accusing him of the commission of or complicity in a crime, are, when not denied, admissible in evidence against him as warranting an inference of the truth of such statements."

But if it be conceded that the question and answer covered by the assignment were incompetent, the substance was almost identical with what had been admitted without objection. Hence, any error there might have been was harmless. *S. v. King,* 226 N.C. 241, 37 S.E. 2d 684, and cases cited.

II. "Was there error on the part of the court in the admission of the alleged dying declarations?"

The record shows that the doctor who examined Irene Rich, wife of defendant, when she arrived at the hospital, testified, over objection of defendant, that he advised her that she was approaching impending death, and that after so advising her, she told him that she had been beaten by her husband; that she came back to live with him six days previously, and during that interval of time she had been beaten several times; that the scratches were inflicted upon her by her husband with a screwdriver; and that, as to the last beating she sustained, he had

beaten her that afternoon, knocked her down, and then kicked her in the abdomen.

In this connection, the rule for the admission of dying declarations is well settled. The declarant at the time he made the statement should have been in actual danger of impending death, and in full apprehension of such danger, and death should have ensued. *S. v. Bright,* 215 N.C. 537, 2 S.E. 2d 541, and cases cited. See also *S. v. Bagley,* 158 N.C. 608, 73 S.E. 995; *S. v. Laughter,* 159 N.C. 488, 74 S.E. 913; *S. v. Stewart,* 210 N.C. 362, 186 S.E. 488; *S. v. Jordan,* 216 N.C. 356, 5 S.E. 2d 156; *S. v. Ensley,* 228 N.C. 271, 45 S.E. 2d 357.

In *S. v. Bagley, supra,* it is said: "Dying declarations are admissible in cases of homicide when they appear to have been made by the deceased in present anticipation of death. It is not always necessary that the deceased should declare himself that he believes he is about to pass away, but all the circumstances and surroundings in which he is placed should indicate that he is fully under the influence of the solemnity of such a belief." In the *Bagley case* the evidence showed that a doctor, who was present with the deceased when he expired, told him that he was in a critical condition and was likely to die, and that if there was any message he wanted to leave, he had better do so,—and it was then that the incriminating declaration was made.

The admissibility of evidence of dying declaration is addressed to the judge and not to the jury. And, on appeal, the ruling of the trial court will be reviewed only to determine whether there was evidence tending to show the facts necessary to the decision. *S. v. Stewart, supra; S. v. Jordan, supra.*

Applying these rules to the evidence before the trial judge, the testimony of the doctor, through whom the declarations of deceased were introduced in evidence, would seem to be sufficient to support the ruling of the court, as to the competency of the declaration. A contrary decision would have found support in the testimony of the doctor. But be that as it might have been, we find no error in the ruling of the trial judge.

III. "Did the court err in its charge to the jury in not submitting that there might be a finding of guilty of involuntary manslaughter?"

As to this contention, the court instructed the jury that one of three verdicts might be returned, guilty of murder in the second degree, guilty of manslaughter, or not guilty. In the light of the evidence offered by the State, it does not appear that the failure of the trial judge to charge on involuntary manslaughter was error.

IV. "Did the court err in its explanation of the significance of the alleged dying declaration in that it placed too much emphasis on the weight and credibility thereof?"

It is contended that the court "overcharged" the jury in that too much stress was laid upon the admissibility of dying declarations,—that the court gave particular and unusual emphasis as to the solemnity of the circumstances wherein a dying declaration is made, thereby giving to the jury an undue and exaggerated impression as to the probative force of such evidence.

In this connection, it is true that the question of the competency of a dying declaration is addressed to the trial judge, as we have stated here-inabove, and the reasons given by the court for admitting such declaration, as an exception to the hearsay rule, are not matters for the consideration of the jury.

Yet we are unable to say that it is reversible error for the judge to tell the jury what the underlying reasons are for admitting such declarations.

And in this case the court instructed the jury that when such declarations are admitted in evidence, the weight of them is a matter for the jury to consider; that the jury should "scrutinize them carefully and cautiously, and not give them any peculiar weight because they are dying declarations, but just determine what weight, if any, they are entitled to receive at your hands, considering them as you would any other competent evidence in the case."

Thus it would seem that this instruction would dispel any probable wrong impression made by giving the reasons for the admission in evidence of such declarations.

Hence, after careful consideration of all questions presented, we find in the judgment below

No error.