STATE OF NORTH CAROLINA v. WILLIAM DAVID CAULEY
AND
STATE OF NORTH CAROLINA v. DOROTHY HEATH CAULEY.

(Filed 7 November, 1956.)

**1. Criminal Law § 81c(3)—**

An exception to the admission of testimony over objection cannot be sustained when testimony to the same effect is theretofore and thereafter admitted without objection.

**2. Criminal Law § 79—**

Exceptions set forth in defendant's brief, but in support of which no argument or reason is stated or authority cited, are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**3. Assault and Battery § 13: Criminal Law § 30½—**

Testimony of a witness that she heard one of defendants beating the child in question is competent when the witness testifies that she knew the voices of defendants, and that she recognized their voices and heard them use vile and profane language to the child and heard the blows and the cries of the child, and motion to strike such testimony is properly denied.

**4. Assault and Battery § 14—**

Evidence in this prosecution of a mother and stepfather for felonious assault on her three-year-old child, *is held* amply sufficient as to the stepfather on the charge of assault with a deadly weapon with intent to kill, inflicting serious injury not resulting in death, and as to the mother in aiding and abetting commission of the offense with full knowledge of the felonious intent.

**5. Assault and Battery § 5—**

In order to be a deadly weapon it is not required that the instrument be a deadly weapon *per se*, but it is sufficient if, under the circumstances of its use, it is an instrument which is likely to produce death or great bodily harm, having regard to the size and condition of the parties and the manner in which the weapon is used, in which instance whether it is a deadly weapon becomes a question for the jury under proper instructions from the court.

**6. Assault and Battery § 14—**

Evidence tending to show that the stepfather of a three-year-old girl beat the child mercilessly from 10:00 p.m. to 6:00 a.m. with a leather belt with a metal buckle, inflicting serious injury and leaving the child in a critical condition, is sufficient to be submitted to the jury upon the question whether the weapon, in the manner and circumstances of its use, was a deadly weapon.

**7. Assault and Battery § 5—**

Intent to kill is a mental attitude which ordinarily must be proven by circumstantial evidence, and such intent may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances.

**8. Assault and Battery § 14—**

Evidence that the male defendant beat this three-year-old stepdaughter with a belt with a metal buckle from the hours of 10:00 p.m. to 6:00 a.m. so brutally and savagely as to inflict a recurrent pattern of stripes on her body with bruises and edema, eyes swollen shut and eyeballs hemorrhaged, leaving the child in a critical condition, is sufficient to be submitted to the jury upon the question of intent to kill.

**9. Husband and Wife § 8—**

If a wife, in the presence of her husband, commits an assault, there is a *prima facie* presumption, in the absence of evidence to the contrary, that she committed the offense under constraint by him, but the presumption is rebuttable, and if the wife acts of her own free will and without any constraint on the part of her husband, she is held to the same responsibility as any other person, and her coverture is no defense.

**10. Same: Criminal Law § 8b—**

Evidence that the male defendant mercilessly beat his three-year-old stepdaughter in the presence of the child's mother, that during the hours the offense was committed the wife was heard cursing and laughing, and that she thereafter said the wounds inflicted on the child were the result of the child's falling from an automobile, *is held* sufficient to take the case to the jury upon the theory that the wife was present, aiding and abetting her husband of her own free will and volition in the commission of the felonious assault.

**11. Assault and Battery § 13: Criminal Law § 34e—**

Testimony that while a three-year-old child was in the hospital, the child, in the presence of her mother, said in reference to a bruised area, "They hit me," referring to the child's mother and stepfather, *is held* competent against the mother as an implied admission of guilt, since the accusation was made under circumstances calling for a reply from her.

**12. Criminal Law § 81c(3)—**

The admission of testimony against the *femme* defendant that the male defendant upon being arrested told her, the *femme* defendant, "don't tell anything," *is held* harmless.

**13. Criminal Law § 81c(4)—**

Where the jury makes no reference to one count, it is equivalent to a verdict of not guilty thereon, and the charge of the court to the jury in regard thereto cannot be prejudicial, even if erroneous.

**14. Criminal Law § 8b—**

The charge of the court as to what constitutes aiding and abetting *held* without error.

**15. Criminal Law § 53g—Instruction as to permissible verdicts that might be returned against each defendant, respectively, held sufficient.**

The male defendant was charged with assault on his three-year-old step-daughter with a deadly weapon with intent to kill, inflicting serious injury not resulting in death, and the *femme* defendant was charged with aiding and abetting in the felonious assault. *Held:* The court's charge correctly · defining the permissible verdicts that might be returned against each defendant respectively, and instructing the jury that if it acquitted the male defendant, it should also acquit the female defendant, *is held* sufficient on this aspect, and not objectionable on the ground that the court did not instruct the jury that it could return a verdict of guilty as to the male defendant and not guilty as to the female defendant.

**16. Criminal Law § 78e(1)—**

Assignments of error to the charge not set out in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**17. Husband and Wife § 8—**

In a prosecution of the wife for aiding and abetting her husband in the commission of a felonious assault in her presence, the failure of the court to charge as to the rebuttable presumption that she acted under his constraint must be held for prejudicial error.

Johnson, J., not sitting.

Bobbitt, J., dissenting in part.

Higgins, J., dissenting.

Appeal by defendants from *Joseph W. Parker, J.,* August Term 1956 of Lenoir.

Criminal prosecution of William David Cauley upon an indictment charging him with an assault with a deadly weapon with intent to kill upon Dorothy Dianne Heath, a three-year-old child, inflicting serious injuries not resulting in death, a violation of G.S. 14-32, and a criminal prosecution of Dorothy Heath Cauley upon an indictment with two counts, the first count charging her with being an accessory after the fact to the felony of an assault with a deadly weapon with intent to kill by William David Cauley upon Dorothy Dianne Heath inflicting serious injuries not resulting in death, and the second count charging her with aiding and abetting William David Cauley in making an assault with a deadly weapon with intent to kill upon Dorothy Dianne Heath inflicting upon her serious injuries not resulting in death.

The cases were consolidated for trial. Both defendants pleaded Not Guilty. The jury returned a verdict of guilty as charged in the bill of indictment against the male defendant, and a verdict of guilty of aiding and abetting in the commission of a felony against the female defendant.

From judgments of imprisonment in the State's Prison as to each defendant, both defendants appeal.

*George B. Patton, Attorney General, and Claude L. Love, Assistant Attorney General, for the State.*

*Jones, Reed & Griffin for Defendants, Appellants.*

PARKER, J. This is a summation of the evidence favorable to the State:

In February 1956 William David Cauley and Dorothy Heath were married. By a prior marriage Dorothy Heath had a son, William Brunell Heath, who was four years old in April 1956, and a daughter, Dorothy Dianne Heath, who was three years old the same month. After the marriage the two children lived with their mother and stepfather.

On 27 June 1956 this family was living about a mile and a half outside the city of Kinston on Route 4. Near neighbors were Mr. & Mrs. J. P. Shivar. Their houses were 12 steps or 36 feet apart, and the bedrooms of the two houses faced each other. It was a warm night, and the bedroom windows in each house were up.

J. P. Shivar was not at home that night. Mrs. Shivar had known William David Cauley about 15 years, and Dorothy Heath Cauley during the four or five months they had been neighbors. She knew their voices. On this night Mrs. Shivar retired early. About 10:00 o'clock she was awakened by hearing a child crying. The child was being whipped, and she heard the licks in her house. From 10:00 o'clock until 1:00 o'clock she heard the child whipped several times, and from 1:00 o'clock to 6:00 o'clock she heard the child whipped constantly. The child was crying, and every now and then uttered a loud, terrifying cry. She heard the male defendant calling the child a b—— and a s. o. b., and saying, "I ought to cut your G—— d—— head off." During this time she heard the female defendant cursing and laughing: she recognized her voice. Prior to this night she had heard the female defendant say they made the children stay in the corner, because they wetted the bed or their pants. During this night she heard the male defendant saying: "Go bring her some water: I will make her drink enough to burst her G—— d—— self open." He made her drink water several different times, and as he tried to make her drink water, she heard him beating her. He told her: "Drink that water, every G—— d—— drop or I will beat you to death." She could hear the child's

body hit the floor, and the male defendant saying, "Get up, G—— d—— you, or I will beat you to death." She heard the female defendant saying, "until it run in my ears": "Walk Dianne, don't go to sleep, walk." She heard the male defendant saying: "Run, G—— d—— you, don't walk, run." She heard this until 6:00 a.m. The lights were on all that night at the Cauley Home. Mrs. Shivar did not see or hear anyone there that night except the defendants and the children. She heard nothing from the little boy. After 10:00 o'clock the male defendant left in his car, but in a short time returned. Mrs. Shivar did not sleep that night after 10:00 o'clock.

The next morning the defendants carried this little girl to the Lenoir Memorial Hospital. There at 9:30 a.m. she was seen in the emergency room of the hospital by Dr. Oscar W. Cranz. The child was semi-conscious, she would not respond, and was in a condition of shock. Dr. Cranz gave this description of her condition: She "was black and blue over most of the body, including her head down, eyes practically closed and swollen, dark bluish areas over the entire body of the child, at least 95% or more of it, eyes, the lids were closed. . . . Both eyes were swollen shut." Dr. Cranz considered the child's condition critical: he could not tell whether the injuries were permanent—it might take six months or a year to determine that. He had pictures taken of the child. The bruises were mostly transversely across the front and back of the child's body: "there was a pattern all over the body." Dr. Cranz called in Dr. W. E. Kieter, a pediatrician, and also made a report to the sheriff's office.

The defendants told Dr. Cranz the child fell out of a moving car. Dr. Cranz testified that injuries sustained in a fall from a moving car are described as brush burns, and he saw no evidence of brush burns on the child.

Dr. W. E. Kieter testified that the little girl had bruises, ecchymosis and edema from the top of her scalp to the bottom of her feet; the scalp was soggy; the eyelids were black and completely swollen shut; a cut on the right temple was oozing blood and serum; the eyeballs had hemorrhaged in the white of the eye; the connection between the upper lip and gum was broken; face, chest and extremities were all bruised; little areas of baldness on the head. He testified the most striking feature of the child's condition was the absence of brush burns and fractures, which often occur in a fall from a moving car. X-ray pictures showed the area of bruising on the child was enormous and tremendous. He testified: "I have never seen anything like it." There was, according to the testimony of Dr. Kieter, a recurrent pattern of stripes on the child's chest, and a recurrent pattern of a U shape or horseshoe shaped pattern six or eight times over the body. The female defendant told Dr. Kieter the child fell from a car. Dr. Kieter testified he had seen

quite often people who had fallen from a moving car and said he didn't "feel that the injuries I observed about the body and head of the child could have been caused by falling from a moving vehicle."

While the defendants and the little girl were at the hospital the morning of the 28th of June, Margaret Shivar (a 15-year-old daughter of Mrs. J. P. Shivar), Betty Jean Taylor and Ruth Holloway, all neighbors, went into the defendants' home. In the bedroom they saw bloody rags and towels, blood on the pillow of a bed, a man's leather belt with a metal buckle lying beside the bed, and a mat of hair on the floor, which two of these witnesses testified, without objection, came from the head of the little girl.

B. A. Holloway lives across the road from the defendants. Several times during the night of 27 June he heard a little child screaming at the Cauley home. He didn't sleep a wink that night.

Sheriff H. C. Broadway, in response to a call, went to the hospital the morning of 28 June. He saw there the nude body of Dorothy Dianne Heath. The child's body was black and blue, and kind of reddish in places, over her body from the thighs to the head. He testified, without objection, "those wounds resembled a person's belt buckle: there were whelps and marks of that description of a belt buckle which I am wearing now."

Mrs. Shivar did not see any blows or licks inflicted upon this three-year-old girl. All she knew about the assault was what she heard. She testified, without objection, that at 10:00 o'clock that night she was awakened "by the whipping of the child and her crying. I heard her being whipped and she was crying." She was then asked: "Tell what you did hear?" She replied: "The child was being whipped. I heard her being whipped, and she was crying." The defendants objected. The objection was overruled, and they excepted and assign this as error. Immediately afterwards she testified, without objection: "I know she was being whipped because I could hear the licks from my house." The assignment of error is without merit for the reason that her testimony to the same effect was admitted in evidence without objection before and after the challenged testimony was admitted. *S. v. Rich,* 231 N.C. 696, 58 S.E. 2d 717; *S. v. King,* 226 N.C. 241, 37 S.E. 2d 684. That the little girl was the victim of the beating is manifest from the male defendant's statement, "go bring her water, I will make her drink enough to burst her G—— d—— self open," from the female defendant's statement, "walk Dianne, don't go to sleep, walk," and from her condition the next morning when she was admitted in the hospital.

On direct examination Mrs. Shivar was asked this question: "Was any statement made about wetting the bed?" She answered: "I had heard Mrs. Cauley say before that was the reason they made them stay in the corner was wetting the bed or their pants." After the an-

swer was given the defendants objected. Their objection was overruled They excepted, and assign this as error. On direct examination she was asked: "You did not go to sleep?" She answered: "No sir, nobody could go to sleep and hear what I heard that night. I couldn't go to sleep. I did not." The defendants objected. Their objection was overruled. They excepted and assign this as error. While these exceptions are set forth in the defendants' brief, in support of them no reason or argument is stated or authority is cited, and they are taken as abandoned. Rules of Practice in the Supreme Court, Rule 28. 221 N.C. 544.

The only other assignment of error as to the testimony of Mrs. Shivar is the failure of the court to strike out all the testimony of Mrs. Shivar as to the whipping of the child. The court very properly denied their motion to strike.

The defendants, who have filed a joint brief, assign as error the denial by the court of their separate motions for judgments of nonsuit. However, their brief states that if the Supreme Court is of the opinion that Mrs. Shivar's testimony is competent, they concede there was sufficient evidence to take the case to the jury as to the male defendant.

It is significant that the defendants in their brief make no contention that the evidence is insufficient to support the charges that a deadly weapon was used in the assault and battery on the helpless three-year-old girl. A deadly weapon is not one that must kill. It is an instrument which is likely to produce death or great bodily harm, under the circumstances of its use. *S. v. Watkins,* 200 N.C. 692, 158 S.E. 393; *S. v. Archbell,* 139 N.C. 537, 51 S.E. 801. Some weapons are *per se* deadly, *e.g.* a rifle or pistol: others, owing to the great and furious violence and manner of use, become deadly. *S. v. Archbell, supra; S. v. Huntley,* 91 N.C. 617. "The deadly character of the weapon depends sometimes more upon the manner of its use and the condition of the person assaulted than upon the intrinsic character of the weapon itself." *S. v. Archbell, supra.* Where the deadly character of the weapon is to be determined by the facts and circumstances, the relative size and condition of the parties and the manner in which it is used, it becomes a question for the jury under proper instructions from the court. *S. v. Watkins, supra; S. v. Beal,* 170 N.C. 764, 87 S.E. 416; *S. v. Archbell, supra; S. v. Norwood,* 115 N.C. 789, 20 S.E. 712. In *S. v. Norwood, supra,* the pushing of two pins—one a black pin worn in defendant's hair, and the other a black pin worn in her dress—down a baby's throat, whereby death ensued, was held to be a killing with a deadly weapon. In *S. v. Archbell, supra,* the defendant, a very strong, large and robust man, assaulted his wife, a very frail and weak woman, by severely beating her with a large leather strap, being part of a buggy trace, about 2½ feet long. The jury convicted the defendant of an assault with a deadly weapon. In upholding the trial this Court said: "An instru-

ment which might be harmless when used upon a strong man, may become deadly when used upon a very frail and delicate woman." In the present case the jury could reasonably infer and find from the evidence that the three-year-old girl on the night of 27 June 1956 was severely beaten from the hours of 10:00 p.m. to 6:00 a.m. by the male defendant with a man's leather belt with a metal buckle, leaving her in a critical condition. Whether this belt, considering the manner in which it was used, the relative size and condition of the male defendant and the helpless three-year-old girl, and her condition when she was admitted in the hospital the next morning, was a deadly weapon was a question for the jury.

It is also significant that the defendants make no contention in their brief that the evidence was insufficient to carry the case to the jury against the male defendant on the felony charge of an assault with a deadly weapon with intent to kill inflicting serious injury not resulting in death, and against the female defendant of aiding and abetting in such an assault with full knowledge of its felonious character. That serious injury not resulting in death was inflicted on the little girl cannot be successfully denied. An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred. An intent to kill "may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *S. v. Revels*, 227 N.C. 34, 40 S.E. 2d 474. In *Pallis v. State*, 123 Ala. 12, 26 So. 339, 82 Am. St. Rep. 106, the defendant placed her new born babe on the side of a public road in a sand bed, without clothing or wrapping, and left it there covered only by straw and leaves. The child was found the next day in a critical condition, but was revived and restored to health by a physician. A conviction of an assault upon a child with intent to murder was upheld by the Supreme Court of Alabama. Without setting forth all the evidence in the instant case, when we consider the evidence that this grown man used a man's leather belt with a metal buckle for hours so brutally and savagely upon this helpless three-year-old child as to leave a recurrent pattern of stripes on her body, with bruises, ecchymosis and edema from the top of her scalp to the bottom of her feet, with both eyes swollen shut, and the eyeballs having hemorrhaged into the white of the eyes, with the area of bruising enormous and tremendous to an extent that Dr. Kieter testified "I have never seen anything like it," and with her condition the next morning at the hospital critical, and when we consider the vile and profane language he used to this child, we are of the opinion, and so hold, that the evidence was sufficient to carry the case to the jury for them to determine, from all the facts and circumstances, whether the criminal intent to kill existed

in the mind of the male defendant at the time he was so mercilessly beating this child with the leather belt with metal buckle. The trial court properly overruled the motions for judgment of nonsuit made by the male defendant.

The female defendant contends that her motions for judgment of nonsuit should have been allowed on two grounds: one, because of the insufficiency of the evidence as to her, and second, that such acts as she committed were in the presence of her husband and under his constraint, and she is therefore excused. On the second ground she cites only the case of *S. v. Williams,* 65 N.C. 398.

If a wife, in her husband's presence, acts of her own free will and free from any constraint upon the part of her husband in committing a crime, she is held to the same responsibility as any other person, and her coverture is no defense. *S. v. Nowell,* 156 N.C. 648, 72 S.E. 590; *S. v. Seahorn,* 166 N.C. 373, 81 S.E. 687; 41 C.J.S., Husband and Wife, sec. 221; 27 Am. Jur., Husband and Wife, p. 237; 4 A.L.R. 267. However, with certain exceptions not material to consider here, it is generally held that there is a rebuttable presumption that a married woman was acting under the influence or coercion of her husband where she committed a criminal act in his presence. *S. v. Williams, supra; S. v. Nowell, supra; S. v. Seahorn, supra;* 41 C.J.S., Husband and Wife, pp. 716-718; 27 Am. Jur., Husband and Wife, secs. 640 and 642; 4 A.L.R. p. 271 *et seq.;* 71 A.L.R. p. 1118 *et seq.* It is said in *S. v. Williams, supra:* "It seems to be admitted by all the authorities that if a wife commit any felony (with certain exceptions not material now to consider) in the presence of her husband, it shall be presumed, in the absence of evidence to the contrary, that she did it under constraint by him, and she is therefore excused. . . . It is also conceded by all the authorities that the presumption may be rebutted by the circumstances appearing in evidence, and showing that in fact the wife acted without constraint; or by the nature of the offense." In *S. v. Nowell, supra,* the Court said: "The presence of the husband makes out a *prima facie* case of coercion only, and is subject to be controlled by evidence that the wife acted voluntarily and not by compulsion." Some courts think this presumption is out of place in this age, and hold against it, and some states have abolished it by statute. See *S. v. Seahorn, supra.* Some courts have taken the view that, under Married Women's Acts completely removing the disabilities of coverture and emancipating married women, this common law presumption no longer exists. See 27 Am. Jur., Husband and Wife, p. 240.

If a wife voluntarily and free from any compulsion or constraint on the part of her husband joins with her husband in committing a crime, both are equally guilty. 41 C.J.S., Husband and Wife, p. 719.

Whether the evidence is sufficient to rebut this presumption depends, of course, upon the facts of the individual case. However, practical weight must be given to this presumption, and in the absence of any evidence to rebut it, the wife's conviction cannot be sustained. The evidence that the severe and brutal beating of this little helpless girl went on from 10:00 p.m. to 6:00 a.m., that during this time the female defendant was heard cursing and laughing and kept saying "walk Dianne, don't go to sleep, walk," and that in her testimony she did not claim to be acting under the constraint of her husband, but testified that the child's injuries resulted from a fall from a moving automobile, tends to show that the wife acted of her own free will and volition and free from any compulsion of her husband. There is not a shred of evidence to show that the mother was crying or pleading with her husband to desist from striking the child. We hold that it was a question for the jury to say whether or not the testimony on the whole rebutted this rebuttable presumption. The evidence was sufficient to carry the case to the jury as to the wife on the theory that she was present, aiding and abetting her husband of her own free will and volition, and free from any constraint by him, in an assault with a deadly weapon with intent to kill inflicting serious injury not resulting in death, with full knowledge of the assault's felonious character, as charged in the second count in the indictment upon which she was convicted.

R. Jack Rider, who operates a newspaper in Kinston, saw Dorothy Dianne Heath in the hospital and talked with her in the presence of her mother. He was asked what the little girl said to him about the bruises on her body. Both defendants objected. The court overruled the objection of the female defendant, and sustained the objection as to the male defendant, instructing the jury that the evidence was only competent as to Mrs. Cauley. Rider testified that she said in reference to a little split on her left big toe that looked like a sore, she fell down on the porch and hurt it, and that in reference to a bruised area on the right thigh, she said: "They hit me." The female defendant did not say anything. On re-cross-examination of Mrs. Cauley she testified that when Rider was talking to her daughter, she was in the bathroom, did not hear all was said, and did not hear her say, "they beat me."

In *S. v. Wilson*, 205 N.C. 376, 171 S.E. 338, the three-year-old grandchild of the prosecuting witness said to the defendant: "You burned our cow." The defendant made no answer, but soon left. This Court held in an elaborate opinion by *Stacy, C. J.*, as to the competency of this evidence that the accusation was made under circumstances calling for a reply by defendant, and was competent as an implied admission. It would seem that the statement of the little girl to Rider in the presence of the female defendant comes within the rule so clearly stated by the learned *Chief Justice* as to when such accusations are competent.

At any rate, considering all the evidence in the case, its admission in evidence is not sufficiently prejudicial to justify a new trial.

Sheriff Broadway arrested the defendants on the charges here. He testified the male defendant told his wife, "don't tell anything." After the answer was given the defendants objected. The objection was over-ruled, they excepted and assign this as error. The identical evidence was testified to later without objection. The defendants in their brief say this statement to his wife while competent against him was not competent against her. It is a well known fact that lawyers frequently advise their clients when arrested not to talk. It would seem that the admission of this evidence as to the wife was harmless.

We have carefully examined the other assignments of error as to the admission of evidence. While some of the solicitor's questions were technically objectionable, none of these assignments of error are suffi-ciently prejudicial to disturb the result below.

The defendants have fourteen assignments of error to the charge.

The first two assignments of error are as to the first count in the indictment found against the female defendant. The jury found the female defendant guilty on the second count in the indictment against her, and said nothing as to the first count. That was equivalent to a verdict of Not Guilty as to the first count. *S. v. Choate,* 228 N.C. 491, 46 S.E. 2d 476. This part of the charge excepted to did not in the slightest degree affect the trial on the second count. If this part of the charge was erroneous, it became harmless, because the female defendant was in practical effect acquitted on that charge. *Quaere:* Can a wife be convicted of harboring her husband, who has committed a felony? See: 4 A.L.R. 281.

The defendants have two assignments of error to the charge of the court as to what constitutes aiding and abetting. The part of the charge challenged here was taken almost verbatim from *S. v. Johnson,* 220 N.C. 773, 18 S.E. 2d 358, and *S. v. Holland,* 234 N.C. 354, 67 S.E. 2d 272, and is in accord with our decisions.

The defendants assign as error that the court did not instruct the jury that it could return a verdict of guilty as to the male defendant and not guilty as to the female defendant. However, a reading of the charge shows that the court carefully and plainly made it clear to the jury that it could convict the male defendant of the crime as charged, or convict him of an assault on a female, or acquit him, and that it could convict the female defendant of aiding and abetting in the crime as charged, or convict her of aiding and abetting in an assault on a female, or acquit her. The court also charged that if the jury acquitted the male defendant, it should return a verdict of not guilty as to the female defendant.

STATE *v.* CAULEY.

Two assignments of error to the charge are deemed abandoned, because they are not set out in the defendants' brief. Rule 28, Rules of Practice in the Supreme Court. 221 N.C. 544. Two assignments of error refer to the court's statements of the contentions of the State.

Many of the exceptions to the charge are attenuate in character with no authorities cited in support of the brief argument made. It would be supererogatory to discuss them all *seriatim* in an opinion. Nevertheless, they have been thoroughly considered. None has been overlooked. A careful reading of the charge as a whole fails to show prejudicial error sufficient to justify a new trial as to William David Cauley.

However, assignment of error 19, based upon exception 32, by the female defendant is good. In reference to that assignment of error, the court instructed the jury that, if the State has satisfied them beyond a reasonable doubt from the evidence, that the female defendant aided and abetted the male defendant in an assault with a deadly weapon with intent to kill, resulting in serious injury not resulting in death, it would be their duty to return a verdict of guilty against her of aiding and abetting in the commission of a felony. Neither here, nor anywhere else in the charge, did the judge instruct the jury that when a wife commits a crime like the offense charged in the present case in the presence of her husband, there is a rebuttable presumption that she acted under his constraint, and that before the jury could convict the wife, the State must carry the burden of proof of rebutting this presumption and of satisfying the jury beyond a reasonable doubt from the evidence that the wife in such case was acting of her own free will and volition and free from any constraint upon the part of her husband in committing the crime. In failing to charge this principle of law, the female defendant was deprived of a substantial right, which entitles her to a new trial. The defendants' brief, while setting forth this assignment of error and discussing it, does not make this point.

No Error as to the defendant William David Cauley.

New Trial as to the defendant Dorothy Heath Cauley.

JOHNSON, J., not sitting.

BOBBITT, J., dissenting in part: A felonious assault, as defined by G.S. 14-32, consists of these essential elements: (1) an assault, (2) with a deadly weapon, (3) with intent *to kill,* and (4) the infliction of serious injury not resulting in death. *S. v. Hefner,* 199 N.C. 778, 155 S.E. 879; *S. v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5.

The words "with intent to kill" are self-explanatory. *S. v. Plemmons,* 230 N.C. 56, 52 S.E. 2d 10. An intent *to injure* does not suffice.

I agree that the evidence for the State afforded a sufficient basis for a verdict that the male defendant was guilty of an assault with a deadly

weapon inflicting serious injury not resulting in death. But, while such evidence indicates clearly that the child was treated shamefully and whipped mercilessly, I do not think the evidence sufficient to support a finding that the assault was made with intent *to kill* her.

I concur in awarding a new trial for the *feme* defendant. For the reason stated above, I think a new trial should be awarded the male defendant.

HIGGINS, J., dissenting: The evidence in this case, if true, and the jury found it was, disclosed cruelty almost beyond belief. But I do not think it shows intent to kill. If two grown people had such intent, all either had to do was to grasp the little girl by her throat and maintain the hold for a few seconds, and all would be over. To say the cruel and barbarous treatment was inflicted for the purpose of taking life, taxes credulity. That such conduct on the part of the defendants deserves severe punishment, I concede. But to sustain the verdict and judgment would require stretching the law. The evidence is plenary to show assault, but not intent to kill. I think the trial judge committed error in submitting the felony charge to the jury. On that ground, I vote for a new trial.