STATE OF NORTH CAROLINA v. WALTER CARNELL MULLEN

No. 811SC124

(Filed 7 July 1981)

1. **Criminal Law § 50.1; Robbery § 3— armed robbery—lethal weapon—expert testimony admissible**

In a prosecution of defendant for attempted armed robbery the trial court did not err in allowing the State's expert witness to testify that in his opinion the instrument allegedly used by defendant in the incident in question was "a lethal weapon, which could be used to kill," and such testimony did not invade the province of the jury to determine whether the instrument allegedly used by defendant constituted a "dangerous weapon" as used in G.S. 14-87, since the witness was tendered to and accepted by the court without objection by defendant as an expert in the field of martial arts and in the use of the martial arts weapon nunchuckas; the witness testified that use of the instrument in the way defendant allegedly used it could be lethal to the person being struck; but the witness did not go further and state that the nunchuckas was therefore a dangerous weapon, implement or means under the circumstances of the case.

2. **Robbery § 4.4— attempted armed robbery—sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for attempted armed robbery where it tended to show that defendant approached his intended victim as the victim was closing a restaurant for the night; the victim had in his possession a locked deposit bag holding receipts; defendant attempted to obtain possession of the deposit bag by striking the victim with nunchuckas; and defendant was identified by the victim and the victim's sister as the person who perpetrated the crime in question.

APPEAL by defendant from *Reid, Judge.* Judgment entered 6 November 1980 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals 2 June 1981.

Defendant was charged in a proper bill of indictment with attempted armed robbery. After defendant pleaded not guilty, the jury found him guilty as charged, and from a judgment imposing a prison sentence of twelve years, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Frank P. Graham, for the State.*

*White, Hall, Mullen, Brumsey & Small, by G. Elvin Small, III, for the defendant appellant.*

HEDRICK, Judge.

[1] Defendant first contends, based on his sixteenth, seventeenth, eighteenth, nineteenth, and twentieth assignments of error, that the trial court committed prejudicial error in allowing the State's expert witness, Tola Lewis, Jr., to testify that in his opinion the instrument allegedly used by defendant in the incident in question was "a lethal weapon, which could be used to kill." Defendant argues that such testimony "invades the province of the jury" to determine whether the instrument allegedly used by defendant constituted a "dangerous weapon" as that term is used in the statute under which defendant was charged, G.S. § 14-87. We do not agree. G.S. § 14-87(a) in pertinent part provides:

> Any person . . . who, having in possession or with the use or threatened use of any firearms or *other dangerous weapon, implement or means,* whereby the life of a person is endangered or threatened unlawfully . . . attempts to take personal property from another . . . , shall be guilty of a felony . . . . [Emphasis supplied]

The record in the present case indicates that after a *voir dire,* Tola Lewis, Jr., was tendered to and accepted by the court, without objection by defendant, as an expert in the "field of martial arts and in the use of the martial arts weapon nunchuckas." The record further shows that, based upon facts introduced into evidence through the testimony of the State's witnesses Simpson and Spence as to the manner in which defendant was striking

Spence with the nunchuckas, Lewis testified that using the instrument in such a way could be lethal to the person being struck. Lewis did *not*, however, go further and state that the nunchuckas was therefore a dangerous weapon, implement or means under the circumstances of the case. Such a determination was properly left in this case to the jury. *See, e.g., State v. Watkins*, 200 N.C. 692, 158 S.E. 393 (1931). These assignments of error are meritless.

[2] Defendant next contends, based on his twenty-fifth assignment of error, that the court erred in denying his motion for judgment as of nonsuit made at the close of all the evidence. He argues that "the record is devoid of any evidence which reasonably conduces to the conclusion of guilt as a fairly logical and legitimate deduction." We disagree. The State offered evidence tending to show the following:

On 14 September 1979, at approximately 12:30 a.m., Ms. Sheila Spence Simpson received a phone call at her Elizabeth City home from her brother, Shelton Spence, who was working the "night shift" that night at the Sonic Drive-In restaurant in Elizabeth City. Spence, who was responsible for counting and depositing the daily receipts, had just finished closing up the restaurant for the night and he asked Ms. Simpson to come pick him up at the restaurant. Ms. Simpson then drove alone to the Sonic Drive-In, arriving around 12:45 a.m. The weather was "sort of windy and cool" but "[i]t was not raining" when she arrived, and because "all the lights were on" the Sonic parking lot area was "very very bright." She parked her car, but left the headlights on and the engine running. No other cars were parked in the lot.

Spence was alone in the restaurant at that time. After Ms. Simpson had waited several moments for him to come out of the restaurant, she heard a dog bark, and when she looked around she observed defendant "in a stoop-like position" at the left corner of the Sonic parking lot, approximately 20 feet from where she was parked. Defendant had something in his hand. Ms. Simpson began to blow her car horn "to warn" her brother, whom she could see "checking out" at the cash register in the "glassed-in" front part of the restaurant. Spence, who was "finishing the books," began to wave, and Ms. Simpson continued to blow the horn. Spence then "closed up the books," and proceeded to

the rear of the restaurant, where he turned off all the lights, except for two outside "canopy lights" over the front door and several lights in the rear of the building. The parking lot area was still light, however, due to a "big night light" in the left corner and floodlights from neighboring businesses. Spence went to the front door to leave, but he could not get the door open, so, after waving his hand to let Ms. Simpson know he was coming, he returned to the rear of the restaurant to exit by the back door. He was carrying a black plastic bag which contained a locked deposit bag holding the "night deposit" of about $870.00.

As Spence proceeded to go around the corner of the building toward where his sister was parked, he heard a "cracking noise" at a picket fence located about thirty feet behind the building. He turned and saw a person come over the fence and begin to run toward him. Spence then started to run for his sister's car, with the person following. By the time he reached her car, the "door was open," and he "jumped immediately on the driver's side of the car" with his left foot outside the car. Spence threw the black plastic bag containing the deposit bag to Ms. Simpson, who then "half-way sat on it." The person running after Spence reached the car and while holding the car door open, the person reached across Spence, trying to get to the deposit bag. By "swinging" in a certain manner an object described as "two sticks each measuring eight to twelve inches in length, maybe three-quarters of an inch in diameter," with "a chain attached to the sticks," defendant began to hit Spence on the arm. Defendant used the object to hit Spence three times. Spence struggled with the person, trying to protect his face from being hit, and he recognized the person as defendant. Defendant was unable to get the deposit bag, and Ms. Simpson "began to holler." Defendant then backed out of the car and ran to the fence behind the restaurant building, and jumped over it.

Defendant had been employed at the Sonic Drive-In for about a month approximately six months prior to the incident. Defendant had worked the night shift with Spence. Defendant had not been employed since leaving the job at the Sonic Drive-In.

The State also offered evidence tending to show that the object used by defendant in attacking Spence was known as "nunchuckas," a weapon used by practitioners of the martial arts, and

that if the nunchuckas was used in such a fashion as described by Spence and Ms. Simpson, it could be lethal.

Defendant offered evidence tending to show that at the time of the incident he was at a residence at the Berkley Trailer Court, located several miles outside Elizabeth City.

We are of the opinion that the evidence was more than adequate to require submission of the case to the jury and to support the verdict. This assignment of error is meritless.

We hold that defendant had a fair trial free from prejudicial error.

No error.

Judges MARTIN (Harry C.) and WELLS concur.